[No. B023334. Second Dist., Div. Two. Mar. 29, 1988.]

MICHAEL NIES, SR., Plaintiff and Respondent, v. NATIONAL AUTOMOBILE AND CASUALTY INSURANCE COMPANY et al., Defendants and Appellants.

COUNSEL

Hillsinger & Costanzo, Michael V. Madigan and Bruce S. Bolger for Defendants and Appellants.

Michael J. Brady and Stacey L. Pratt as Amici Curiae on behalf of Defendants and Appellants.

Weldon Diggs and Linda M. Wilde for Plaintiff and Respondent.

OPINION

**FUKUTO, J.—**

### INTRODUCTION

Following a jury trial, judgment was entered for plaintiff, Michael Nies, Sr., against National Automobile and Casualty Insurance Company (National) and Charles J. Morris (Morris), Vice President and General Claims Manager for National (collectively, defendants). The jury found that National had breached its covenant of good faith and fair dealing, and that National and Morris had breached their duties under Insurance Code section 790.03, subdivision (h) and acted in conscious disregard of plaintiff's rights. Plaintiff was awarded $35,000 in general damages and $70,000 in punitive damages. National and Morris appeal.

### ISSUE PRESENTED

Plaintiff, a National automobile insurance policyholder, was injured by an uninsured motorist on September 1, 1979. He made a claim against

National for uninsured motorists benefits in the sum of $30,000, the policy limits. National initially denied coverage under its interpretation of the policy, and plaintiff filed suit for tortious breach of the insurance contract. On advice of counsel, National changed its position and, on December 24, 1979, plaintiff received $30,000 in full settlement of the uninsured motorists claim.

The bad faith litigation continued, however, and National subsequently filed an answer denying uninsured motorists coverage and a cross-complaint denying coverage and praying for the return of the $30,000. Prior to trial, National's cross-complaint was amended to delete the prayer for the return of the money. At trial, plaintiff was permitted, over defendants' objection, to introduce evidence of the defendants' responsive pleadings as proof that defendants acted in bad faith when they initially denied the uninsured motorists claim.

At issue is the admissibility of evidence of defendants' pleadings in defense of the bad faith action following plaintiff's acceptance of $30,000 in full settlement of the underlying insurance claim. Relying on *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870 [221 Cal.Rptr. 509, 710 P.2d 309], defendants contend that evidence of National's conduct after the December 24, 1979, payment of plaintiff's uninsured motorist claim was inadmissible at the subsequent trial of the insurance bad faith action. Plaintiff agrees that *White* is controlling, but contends that the case compels a contrary conclusion. An amicus curiae brief has been filed by the Association of Defense Counsel asserting, in essence, that public policy requires exclusion of evidence of an insurer's postsettlement litigation tactics in defending a bad faith lawsuit. We reverse the judgment.

### THE FACTS

#### *The Chronology*

Plaintiff purchased an automobile insurance policy from National in January 1979. The policy included "Protection Against Uninsured Motorists Coverage" with a $30,000 policy limit under which National agreed to "pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; . . ." The policy also included medical expenses coverage with a policy limit of $2,000, which obligated National to pay, inter alia, "all reasonable medical expense[s] incurred within one year from the date of accident for bodily injury caused by accident and sustained

by [¶] ■ the named insured or a relative; . . . [¶] (c) through being struck by a highway vehicle. For both types of coverage, the policy defined "highway vehicle" as "a land motor vehicle or trailer other than (1) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads, (2) a vehicle operated on rails or crawlertreads, or (3) a vehicle while located for use as a residence or premises; . . ."[1]

On September 1, 1979, plaintiff was struck by a dune buggy driven by an uninsured motorist. The accident occurred in a dry lake bed in San Bernardino County. Plaintiff's injuries were severe. He required immediate treatment in a trauma center and hospitalization for approximately six weeks, and was wheelchair bound for a substantial time following his release from the hospital. The damages suffered by plaintiff as a result of the accident exceeded the limits of his uninsured motorists and medical expense insurance coverage.

The first demand for payment of uninsured motorists and medical expense benefits was made by plaintiff's attorney in a letter dated September 12, 1979, and received by National on September 13, 1979. Claims supervisor Vernon Mahlman (Mahlman) received notice of the claim and prepared a "claim file makeup sheet," treating the matter as an uninsured motorists claim. Defendant Morris, in his capacity as General Claims Manager, was Mahlman's supervisor. Morris questioned the coverage and directed Mahlman to contact the Department of Motor Vehicles to ascertain whether the dune buggy which struck plaintiff was registered for highway use. It was not. On September 18, 1979, Morris notified plaintiff's attorney by telephone, and in writing, of National's intention to deny coverage.

---

[1] In 1979, Insurance Code section 11580.2 provided in relevant part: "No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle, except for policies which provide insurance in the Republic of Mexico issued or delivered in this state by nonadmitted Mexican insurers, shall be issued or delivered in this state to the owner or operator of a motor vehicle, or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally used or principally garaged in this state, unless the policy contains, or has added to it by endorsement, a provision with coverage limits at least equal to the financial responsibility requirements specified in Section 16056 of the Vehicle Code insuring the insured, his heirs or his legal representative for all sums within such limits which he or they, as the case may be, shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle. . . . [¶] (2)(b)(B) . . . As used in this section, the term 'uninsured motor vehicle' shall not include . . . a land motor vehicle or trailer operated on rails or crawler treads or while located for use as a residence or premises and not as a vehicle, or a farm-type tractor or equipment designed for use principally off public roads, except while actually upon public roads." (Stats. 1978, ch. 251, § 1, p. 526.) The definition of the term "highway vehicle" employed by National differs from the definition used in Insurance Code section 11580.2, subdivision (2)(b)(B) only by the insertion of the word "other" before the word "equipment" in subsection (1) of subdivision (2)(b)(B).

Morris' letter memorialized the reasons for denial of uninsured motorists and medical expense coverage.

"You advised that you had reviewed our insured's insurance contract and indicated agreement with our position that the dune buggy causing damage to your client did not qualify as an uninsured motor vehicle either under our insurance contract nor the insurance code. Specifically we cover, under certain circumstances, coverage for injuries received through the negligent operation of an uninsured highway vehicle. We define a highway vehicle as excluding 'equipment designed for use principally off public roads, while not upon public roads.' As verified by the police report your client was injured off a public road by a vehicle designed for use principally off public roads. As I mentioned to you on the phone we checked the 'license plate' of the dune buggy with the Department of Motor Vehicles in Sacramento and were informed that this license number was issued to an off highway vehicle. [¶] If you have any evidence to support a position contrary to the one that is stated above and one which you apparently agreed with in our telephonic conversation, I would appreciate the opportunity to evaluate the need for a change in our position. In the meantime there is collision coverage available to your client and following your direction we will contact Mr. Nies and handle that aspect of the claim."

On September 18, 1979, plaintiff was notified by his attorney that National had denied his claim.

On November 16, 1979, plaintiff's attorney sent a second letter to National, demanding payment of uninsured motorists benefits. That letter explained: "The portion of your policy upon which you relied to deny liability appears to modify the phrase 'a farm-type tractor or equipment designed for use principally off public roads, except while actually upon public roads.' The latter portion of that phrase, 'equipment designed for use principally off public roads', does not appear in the insurance code as a separate basis for excluding coverage and seems to apply to 'farm-type' equipment. [¶] As you are aware, any ambiguity in an insurance contract will be interpreted against the company and should there be no settlement within the $30,000 limit afforded to my client, litigation must be considered for the entire value of my client's claim."

In a letter dated December 3, 1979, signed by Mahlman, National responded: "Your letter of November 16th, 1979 gives rise to any reader an absolute necessity of putting forth considerable thought. It certainly made me do a lot of thinking about the intent of the law. Also, about the wording and intent of the policy. [¶] I strongly feel the intent of that very sentence we now discuss, was to set forth description of two definite pieces of

equipment, the same as the preceding sentence, and that which follows. [¶] Consequently, I feel it necessary, the matter be adjudicated. For that reason I have asked the law firm of Morris, Moore and Morris to file a relief action."

On December 5, 1979, National's attorney, James Moore, received a file and transmittal letter instructing him to file a declaratory relief action against plaintiff to determine the issue of coverage.

Plaintiff filed an action for tortious breach of insurance contract on December 6, 1979. The complaint stated causes of action for breach of duty of good faith and fair dealing, and breach of statutory duties, generally alleging a wilful, bad faith failure to promptly pay medical expense and uninsured motorists benefits,[2] and prayed for general damages in the sum of $500,000 and punitive damages "in an amount appropriate to punish or set an example of defendants; . . ."[3] A copy of the complaint was sent to National's attorney on December 7, 1979.

On December 13 or 14, 1979, National's attorney researched the coverage issue and discovered the case of *State Farm Mut. Auto. Ins. Co.* v. *Mrozek* (1972) 29 Cal.App.3d 113 [105 Cal.Rptr. 189], which appeared to require payment of uninsured motorists benefits to plaintiff.[4] He immediately advised National to pay plaintiff $30,000 in uninsured motorists benefits, and on December 14, 1979, after obtaining National's approval, he telephoned plaintiff's attorney to advise him of the offer. National issued a draft for $30,000 on December 21, 1979, which was received by plaintiff on December 24, 1979. Plaintiff was required to sign a Receipt Release and Trust Agreement acknowledging his receipt of $30,000 in full settlement of all claims under his automobile insurance policy.

---

[2] Causes of action for breach of fiduciary duty and fraud were dismissed prior to trial on plaintiff's motion.

[3] Plaintiff filed an amended statement of damages on October 8, 1982, seeking punitive damages in the sum of $1,500,000. No further amendments to the complaint were filed.

[4] *State Farm Mut. Auto. Ins. Co.* v. *Mrozek, supra,* 29 Cal.App.3d 113 was an action for declaratory relief brought by an insurance carrier whose insured was struck by a dune buggy operated by an uninsured motorist. The accident occurred in sand dunes, off a public highway. The version of Insurance Code section 11580.2 then in effect was, in all material respects, identical to law in effect at the time of plaintiff's accident. Mandatory uninsured motorists coverage was not required for " 'a land motor vehicle or trailer operated on rails or crawler-treads or while located for use as a residence or premises and not as a vehicle, or a farm-type tractor or equipment designed for use principally off public roads, except while actually used upon public roads.' " (*Mrozek, supra,* at pp. 114-115.) The Court of Appeal held that the words "farm-type," as used in the statute, were modified by the word "tractor" and the word "equipment," thereby excluding from coverage only "farm-type" equipment, and not dune buggies, as the insurance company had contended.

### The Disputed Evidence

Defendants filed motions *in limine,* seeking exclusion of any evidence or testimony pertaining to National's conduct *after* payment of the $30,000 in uninsured motorists benefits on December 24, 1979. In particular, defendants sought, unsuccessfully, to prevent any reference to pleadings filed by defendants in defense of plaintiff's lawsuit for tortious breach of the insurance contract: a cross-complaint filed in August 1980 which denied coverage on the ground that a dune buggy was not a "highway vehicle" within the meaning of the policy, and prayed for the return of $30,000 paid to plaintiff in settlement of his claims; an answer filed in August 1980, which asserted as an affirmative defense that plaintiff's signing of the receipt, release and trust agreement constituted a bar to his cause of action for insurance bad faith; an amended answer filed on July 19, 1983, which was asserted as a second affirmative defense that there was no coverage because a dune buggy was not a covered highway vehicle within the meaning of the insurance policy; and an amended cross-complaint filed in July 1983, which deleted the prayer for return of the $30,000.

Over objection, plaintiff was permitted to call National's former attorney, James Moore, to testify regarding the filing of National's responsive pleadings. Also over objection, plaintiff was permitted to examine defendant Morris regarding the filing of the pleadings and his role in controlling the litigation. Morris testified that although he had instructed counsel to "take whatever action [necessary] to protect National Auto's interest," he was unaware until 1980 or 1981 that a cross-complaint for the return of the $30,000 had been filed against the plaintiff. Morris disagreed with counsel's methods and immediately requested dismissal of the cross-complaint. During preparation for trial, he discovered that the cross-complaint was still pending.

Kenneth Blickenstaff, an insurance bad faith specialist, testified that, in his opinion, National had breached the implied covenant of good faith and fair dealing by denying plaintiff's claim before seeking legal advice on coverage of dune buggies, and by failing to interpret any ambiguity in the language of the policy in favor of the insured. According to Blickenstaff, defendants had violated subsections (1), (3), (5) and (13) of subdivision (h) of Insurance Code section 790.03 by failing to promptly provide a reasonable explanation of the reasons for denying the claim; by misrepresenting to the claimant the provisions of the policy relating to coverage of dune buggies; by failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under the insurance policy, and for staying abreast of current law; and by failing to effectuate a prompt,

fair and equitable settlement of the claim once they became aware that the *Mrozek* case was controlling.[5]

Blickenstaff also indicated, however, that National's handling of the uninsured motorists claim was not unreasonable prior to the receipt of plaintiff's attorney's letter of November 16, 1979.

Over defense objection, Blickenstaff testified that, in his opinion, National had breached the implied covenant of good faith and fair dealing in August 1980, by filing responsive pleadings in the bad faith case which denied coverage and sought recovery of the $30,000 paid to plaintiff in December 1979. Blickenstaff acknowledged that, in his opinion, National's conduct, asking for the return of the settlement money, "constitute[d] the bad faith in this case."

### Evidence of Damages

As evidence of damages, plaintiff and his wife each testified that they suffered emotional distress as a consequence of National's denial of uninsured motorists benefits until December 24, 1979. At the time of the accident, plaintiff was employed as a maintenance mechanic at Spectrol Electronics and was the sole supporter of a family which included four young children. The accident resulted in the loss of plaintiff's job and a promised promotion. Plaintiff suffered from anxiety, marital discord, and an ulcer as the family was forced to survive on food stamps, borrowed money and credit cards. Christmas was nearly ruined because plaintiff and his wife were unable to buy gifts for their children in time for Christmas.

Called as a defense witness, plaintiff admitted that his marital strife preceded the accident. Mrs. Nies had expressed the desire to date other men

---

[5]The relevant subsections of subdivision (h) of Insurance Code section 790.03 provide: "The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance.

". . . . . . . . . . . . . . .

"(h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices:

"(1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue.

". . . . . . . . . . . . . . .

"(3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

". . . . . . . . . . . . . . .

"(5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

". . . . . . . . . . . . . . .

"(13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement."

and had encouraged her husband to see other women. Plaintiff was with a woman other than his wife the night of the accident. Plaintiff experienced considerable emotional distress because his wife permitted another man to move into the family residence during plaintiff's hospitalization.

Plaintiff also testified that his medical expenses were eventually covered by a medical health care provider. Commencing in February 1980, plaintiff received social security benefits nearly equal to his preaccident salary.

At the time of trial, plaintiff's lawsuit against the driver of the dune buggy was still pending.

## Evidence of Net Worth

It was stipulated that National's net worth was $5,317,868.

## ARGUMENT

■ Defendants contend that their responsive pleadings, filed after payment of uninsured motorists benefits, were irrelevant to prove that defendants acted in bad faith when they initially denied the claim. We agree.

Plaintiff's theory of recovery was that during the nearly three-and-a-half-month delay between the notice of claim and the payment of $30,000, National breached its statutory duties, and the implied covenant of good faith and fair dealing by failing to *promptly* investigate and research the law controlling plaintiff's claim, forcing plaintiff to file an insurance bad faith lawsuit to compel National to comply with its obligations under the policy. It was not asserted that National was aware of the *Mrozek* decision, or other controlling legal authority, yet refused to pay the claim. We fail to see how National's responsive pleadings, filed in defense of plaintiff's pending bad faith action, had any value for impeachment purposes when National itself claimed that it was ignorant of *Mrozek* until more than three months after plaintiff's first demand for payment of benefits was made.

Moreover, plaintiff offered the disputed evidence for the sole purpose of proving that defendants acted in bad faith toward their insured during the period which preceded payment of uninsured motorists benefits. Indeed, no evidence was presented that plaintiff was damaged as the result of defendants' purportedly bad faith litigation tactics. Plaintiff's testimony established nothing more than that he became aware that National had cross-complained for the return of the $30,000 "several months" after he received the money. Given plaintiff's posture, the trial court erred to the extent it

found the responsive pleadings relevant to prove that defendants breached the covenant of good faith and fair dealing.

Joined by the Association of Defense Counsel as amicus curiae, defendants assert that insurers will be disabled from conducting a vigorous defense in a bad faith insurance action if their pleadings may be used to prove preexisting bad faith. We share that concern.

Plaintiff was paid the full amount of the policy coverage within nine or ten days of National's discovery of the *Mrozek* decision. When it appeared that plaintiff intended to press for an even greater sum via his previously filed action for bad faith, National filed its responsive pleadings which, in essence, asserted that its original determination of lack of coverage was correct and sought a legal determination that the decision in *State Farm* v. *Mrozek, supra,* 29 Cal.App.3d 113, was in fact wrong. This was a question of statutory and contract interpretation which would not be submitted to the jury.

National had an absolute right to defend against plaintiff's claim. That right necessarily included the right to litigate the correctness of its original position, conceding that coverage was controlled by a single Court of Appeal decision. To permit expert testimony on what constitutes bad faith to turn the pursuit of that right into evidence of bad faith is to accord the decision in *State Farm* v. *Mrozek* greater importance than it merited and seriously and wrongfully impair defendants' right to have their day in court.

There are numerous, precise legal issues on which California Court of Appeal decisions are in conflict as between the districts as well as between divisions within a single district. These conflicts occur because a single Court of Appeal decision does not constitute binding statewide precedent in other Courts of Appeal.

Plaintiff's reliance on *White* v. *Western Title Ins. Co., supra,* 40 Cal.3d 870 is not well taken. In *White,* a policyholder filed suit against the defendant title insurance company for breach of contract and negligence. After rejecting settlement offers of $3,000 and $5,000 respectively, the insured amended his complaint to state a cause of action for breach of the implied covenant of good faith and fair dealing. The issues of liability and damages were bifurcated. After a court trial resulted in findings that the insurer was liable for breach of contract and negligence, the insurer offered to settle the case for $15,000. The plaintiff rejected the offer and the remaining issues were tried by jury.

At the trial of the insurance bad faith cause of action, the plaintiff was permitted to introduce evidence that subsequent to the initiation of

litigation, but prior to entry of the interlocutory judgment on the underlying cause of action, the insurer made offers to settle the case for $3,000 and $5,000, respectively. The jury returned a special verdict finding that the insurer had breached the covenant of good faith and fair dealing and awarded compensatory damages in the sum of $20,000.

The Supreme Court held that the insurer's paltry offers to settle could be used against it as evidence of bad faith even though those offers were made after litigation on the underlying claim had commenced. The court decided only that the initiation of litigation was not the controlling factor in determining admissibility. The court did not decide specifically what types of postlitigation activity would or would not be relevant or admissible on the issue of bad faith, nor did it address the policy issues involved in permitting a lay jury to impute improper motives to the imposition of a legally proper defense. Thus, *White* is not authority for declaring that the disputed evidence in this case was relevant.

A simple summary of what occurred here illustrates why the admission of evidence of National's responsive pleadings requires reversal of the judgment. Following an off-road accident involving an off-road vehicle, on September 12, 1979, plaintiff made a claim for uninsured motorists coverage. His policy contained an exclusion for certain types of off-road accidents which tracked the language of a provision of the Insurance Code. National's general claims manager reviewed the claim and concluded, reasonably, that the accident was within the purview of the policy exclusion.[6] He discussed the claim with plaintiff's attorney who acknowledged that he, too, was not certain of coverage.

National referred the matter to its retained counsel, who shortly thereafter discovered a single Court of Appeal decision holding that the exclusion was not applicable to the type of vehicle which caused plaintiff's injuries. Ten days later, plaintiff received a check for the full amount of the policy limits. Given the paucity of evidence of bad faith, it is reasonably probable that a different verdict would have resulted absent the improperly introduced pleadings, and the testimony of plaintiff's expert that National's answer and cross-complaint "constitute[d] the bad faith in this case."

---

[6] We note that in *State Farm Mut. Auto. Ins. Co.* v. *Mrozek, supra,* 29 Cal.App.3d 113, an experienced trial judge in San Diego County reached the same conclusion.

The judgment is reversed.[7] Appellants to recover costs on appeal.

Compton, Acting P. J., and Gates, J., concurred.

A petition for a rehearing was denied April 13, 1988, and respondent's petition for review by the Supreme Court was denied June 8, 1988. Mosk, J., was of the opinion that the petition should be granted.

---

[7] We reject defendants' contention that the evidence was barred by Civil Code section 47, subdivision 2. (See, *White v. Western Title Insurance Co., supra,* 40 Cal.3d at p. 888.) In view of our determination to reverse the judgment, defendants' remaining contentions need not be addressed.