[No. A038773. First Dist., Div. One. Feb. 26, 1990.]

CONTINENTAL CASUALTY COMPANY, Plaintiff and Respondent,
v.
ROYAL INSURANCE COMPANY OF AMERICA, Defendant and
Appellant.

**COUNSEL**

Long & Levit, Joseph P. McMonigle, Marsha L. Morrow and Mark S. Kannett for Plaintiff and Respondent.

Rogers, Joseph, O'Donnell & Quinn, Susan M. Popik and Nance F. Becker for Defendant and Appellant.

**OPINION**

**HOLMDAHL, J.**—An excess carrier sued a primary carrier for breach of the covenant of good faith and fair dealing, and unfair claims practices. The excess carrier sought to recover sums paid on behalf of the insured, after the primary carrier allegedly rejected a reasonable settlement offer within the primary policy limits. The jury returned a verdict in favor of the excess carrier and the primary carrier appeals. The primary carrier asserts the trial court made a series of evidentiary and instructional errors.

The judgment is affirmed.

*Statement of Facts*

Royal Insurance Company of America (hereafter, Royal) and Continental Casualty Company (hereafter, Continental) provided liability insurance to Bidart Brothers' Ranch (hereafter, Bidart). Royal provided primary insurance (up to $500,000) and Continental provided excess insurance.

On February 20, 1979, a house owned by Bidart, located on a ranch owned and operated by Bidart, exploded as a result of an underground accumulation of propane gas. A family of five, the Corderos, lived in the house. Pablo Cordero, Sr., was employed at the ranch. He was killed, along with one of his children. His wife and another child suffered severe burns. The remaining child escaped serious physical injury, but suffered psychological trauma.

The surviving Corderos sued Bidart; Petrolane, Inc. (hereafter, Petrolane), the company that supplied the gas and maintained the gas lines; Blackie's Plumbing Service (hereafter, Blackie's), which had installed a new sewer line to the Cordero home and, in the process, ruptured a gas line; and, Jenny's Plumbing, which serviced the Corderos' gas appliances.

Royal undertook the defense of Bidart. The Corderos' attorney, Daniel Wilcoxen, engaged in extensive settlement negotiations with the various defendants. He made a $5 million demand on all defendants in December, 1979. Blackie's settled for its insurance policy limits of $500,000. Wilcoxen wanted $500,000 from Bidart, but received no offer from Royal. It is not clear whether Wilcoxen ever communicated to Royal his desire for $500,000 from Bidart.

Wilcoxen turned to Petrolane and, in August 1980, negotiated a sliding scale settlement with Petrolane. Petrolane agreed to pay $3.6 million, in return for the right to recoup the first $1.6 million, plus 50 percent of any sums over $1.6 million, from any sums recovered from Bidart or Jenny's Plumbing. Petrolane tried, without success, to get Bidart (Royal) to participate. Jenny's Plumbing then settled with the Corderos for $200,000.

Shortly after the Corderos settled with Petrolane, Royal offered the Corderos $100,000. The offer was rejected.

In July 1981, Royal tendered its policy limits, $500,000, to Continental, and asked Continental to assume Bidart's defense. Royal, however, also told Continental that if it did not accept Royal's offer, Royal would tender the $500,000 to the Corderos and withdraw from the defense. Continental

agreed to accept the $500,000 and assume Bidart's defense. Continental assumed the defense, but Royal never paid Continental the $500,000.

Continental negotiated a settlement with the Corderos, on behalf of Bidart, for $1.4 million. Royal contributed its policy limit to the settlement.

*Procedural History*

On November 18, 1983, Continental filed a "Complaint for Violation of California Insurance Code Unfair Practices Act and Equitable Subrogation" against Royal. Continental alleged that Royal's failure to attempt in good faith to effectuate a settlement of the Cordero action forced Continental to pay $900,000 in excess of Royal's policy limits. The complaint set forth two theories of recovery: A) violation of statutory duties by Royal (Ins. Code, § 790.03, subd. (h)); and B) breach of the implied covenant of good faith and fair dealing by Royal with respect to Bidart, with Continental subrogated to Bidart's rights. Continental sought to recover the $900,000 it paid to settle the Cordero claim, and the sums it expended defending Bidart.

Jury trial commenced on March 3, 1987, and continued through March 27. The jury returned a general verdict in favor of Continental, and awarded damages in the sum of $900,000. The jury responded "yes" to all of the following special interrogatories:

"QUESTION NO. 1: With respect to the settlement of The *Cordero* action, did Royal breach its implied obligation of good faith and fair dealing as to its insured?

"QUESTION NO. 2: Was the breach of the implied obligation of good faith a legal cause of the damages claimed by CNA [Continental]?

"QUESTION NO. 3: Did Royal fail to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim where liability was reasonably clear?

"QUESTION NO. 4: Was Royal's failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim where liability was reasonably clear a legal cause of the damages claimed by CNA?

"QUESTION NO. 5: Did Royal breach its duty to defend The Bidart Brothers Ranch?

"QUESTION NO. 6: Did Royal breach the implied obligation of good faith and fair dealing by not defending The Bidart Brothers Ranch?

"QUESTION NO. 7: Did Royal's breach of the implied obligation of good faith and fair dealing with respect to the defense of The Bidart Brothers legally cause the damages, other than the attorney fees paid by CNA to Long and Levit, claimed by CNA?"

The trial court added additional damages of $110,216.44 for attorney's fees incurred by Continental in defending Bidart, and $277,851.37 for interest.

Royal appeals.

### Affirmative Defenses/Conduct of Excess Carrier

At trial, Royal sought to introduce evidence of Continental's conduct. On appeal, Royal claims the trial court erred when it refused to allow such evidence with respect to two matters. First, Royal contends it should have been allowed to present evidence that showed Continental never communicated its concerns to Royal and, therefore, Continental consented to, or acquiesced in Royal's conduct. Second, Royal contends its experts would have testified that Continental violated basic principles of handling excess insurance claims and, therefore, was at least partly responsible for its loss.[1]

The ability of an excess carrier to recover damages when the primary carrier unreasonably fails to settle a claim is well established in California. "This rule . . . is based on the theory of equitable subrogation: Since the insured would have been able to recover from the primary carrier for a judgment in excess of policy limits caused by the carrier's wrongful refusal to settle, the excess carrier, who discharged the insured's liability as a result of this tort, stands in the shoes of the insured and should be permitted to assert all claims against the primary carrier which the insured himself could have asserted [Citation]. Hence, the rule does not rest upon the finding of any separate duty owed to an excess insurance carrier." (*Commercial Union Assurance Companies* v. *Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 917-918 [164 Cal.Rptr. 709, 610 P.2d 1038]; see also *Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group* (1978) 76 Cal.App.3d 1031, 1050 [143 Cal.Rptr. 415]; *Continental Cas. Co.* v. *United States Fid. & Guar. Co.* (N.D.Cal. 1981) 516 F.Supp. 384, 387-388.)[2]

---

[1]The trial court attempted to exclude all evidence of Continental's conduct prior to the settlement of the claim against Bidart, "except Continental's evaluation of the case." Royal concedes that "much of [its] preferred evidence as to [Continental's] conduct came in indirectly . . . ." This included a great deal of testimony regarding industry custom and practice. However, Royal notes its counsel was not permitted to explain the impact of the evidence (through expert testimony or closing argument), nor was the jury permitted to consider the evidence in deciding upon its verdict.

[2]One California court purported to find a "three-way relationship" ("triangular reciprocity") between the insured, the primary carrier, and the excess carrier, "which . . . may

██ What has not been definitively established, is whether California law allows the primary carrier to raise affirmative defenses arising from the conduct of the excess carrier.

In *Continental Cas. Co.* v. *United States Fid. & Guar. Co., supra,* 516 F.Supp. 384, an equitable subrogation action, the court found the primary carrier had breached its duty of good faith and fair dealing. The court, applying California law, refused to allow the primary carrier to raise certain defenses. The primary carrier argued the excess carrier had a duty to mitigate damages by attempting to settle the action on its own. The court rejected this argument on the ground the primary carrier controls the litigation, and it is improper for the excess carrier to interfere. (*Id.* at p. 392.) For the same reason, the court rejected the primary carrier's "purported defense of inequitable conduct" by the excess carrier. (*Id.* at p. 393; see *Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group, supra,* 76 Cal.App.3d at pp. 1054-1055.) The court noted an excess carrier has no duty to contribute to a settlement or to the defense of the insured until the primary carrier's policy limits have been exhausted. (*Continental Cas. Co.,* 516 F.Supp. at p. 393; see *Signal Companies, Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359, 370-371 [165 Cal.Rptr. 799, 612 P.2d 889, 19 A.L.R.4th 75].) Finally, the court declined to apply the principles of contributory negligence/comparative fault. Though the applicability of those principles was "uncertain," the court held that because the excess carrier "had neither a duty to settle nor a duty to volunteer a contribution to a settlement in excess of primary limits, its failure to do so was not negligent in any event." (*Continental Cas. Co.,* 516 F.Supp. at p. 393, fn. omitted.)

A federal district court, attempting to divine Indiana law, has also discussed the relevance of the excess carrier's conduct. (*Certain Underwriters of Lloyd's* v. *Gen. Acc. Ins.* (S.D.Ind. 1988) 699 F.Supp. 732.) Since no Indiana court had analyzed the issues before it, this federal court proceeded to review national trends with respect to the rights and duties of excess carriers as against primary carriers. Initially, the court concluded Indiana would adopt the majority (and California) rule, that the doctrine of equitable subrogation allows an excess carrier to recover damages against a primary carrier for wrongful failure to settle. (*Id.* at p. 738.) With respect to any duties the excess carrier owes the primary carrier, the court decided any duty owed by the excess carrier flows only out of the duties owed by the

engender reciprocal duties of care in the conduct of settlement negotiations . . . ." (*Transit Casualty Co.* v. *Spink Corp.* (1979) 94 Cal.App.3d 124, 134-135 [156 Cal.Rptr. 360].) The Supreme Court, in *Commercial Union Assurance Companies* v. *Safeway Stores, Inc., supra,* 26 Cal.3d at p. 921, disapproved of *Transit Casualty,* though not explicitly on this point. However, the Supreme Court held the excess carrier's right to sue the primary carrier was based on the theory of equitable subrogation and not negligence. (*Id.* at pp. 917-918.)

insured to the primary carrier. (*Id.* at p. 739.) However, the excess carrier may be estopped from recovery if it actively participates in the settlement negotiations. (*Ibid.*)

The court in *Certain Underwriters of Lloyd's* rejected a contributory negligence/comparative fault defense. (699 F.Supp. at p. 741.) The excess carrier has no duty to investigate settlement options, no duty to hire lawyers to monitor its interests, and no right to expect to participate in the litigation. (*Id.* at pp. 739-740.) "The excess carrier consequently has no duty to participate in the defense, and any evidence of the excess's activities other than proof of out and out settlement negotiations is irrelevant in subrogation actions, excess carrier against primary carrier." (*Id.* at p. 740.) The court also rejected an estoppel/laches defense. (*Id.* at pp. 741-742.) The court concluded evidence of the excess carrier's conduct, other than a showing of affirmative misleading conduct, was not relevant and would confuse or prejudice the jury. (*Id.* at p. 742.)

■ California law specifies the same basic underlying duty for excess carriers as found by the court in *Certain Underwriters of Lloyd's*: The excess carrier has no duty or right to participate in the defense, absent contract language to the contrary, until the primary policy limits are exhausted. (*Signal Companies, Inc.* v. *Harbor Ins. Co., supra,* 27 Cal.3d 359, 370-371; *Chubb/Pacific Indemnity Group* v. *Insurance Co. of North America* (1987) 188 Cal.App.3d 691, 698 [233 Cal.Rptr. 539], compare *Interstate Fire & Cas. Co.* v. *Stuntman Inc.* (9th Cir. 1988) 861 F.2d 203, 205-206.) ■ Royal's policy reserved to itself the "right and duty" to defend. The reasoning of the two federal district courts, applying California and Indiana law, is sound. Royal does not claim it had evidence of affirmative misleading conduct on the part of Continental. Royal sought to prove Continental failed to act—that it failed to participate and monitor Royal's acts. There is no authority that holds an excess carrier should be charged with making sure the primary carrier fulfills its good faith obligations to the insured. Evidence of Continental's conduct, including evidence of industry custom and practices, was not relevant under these circumstances.

Royal cites *Puritan Ins. Co.* v. *Canadian Universal Ins. Co.* (3d Cir. 1985) 775 F.2d 76, 80, in support of its argument that Continental consented to Royal's handling of the case. The Third Circuit, applying Pennsylvania law, held an excess carrier could not maintain a bad faith action against the primary carrier, where the insured consented to the primary carrier's decision to try the case. (*Id.* at p. 80.) As Continental points out, the holding in

Puritan is entirely consistent with the theory of equitable subrogation.[3] Continental steps into the shoes of the insured and is thus bound by the insured's rejection of a settlement offer. Royal does not argue that Bidart consented to Royal's actions.

The trial court properly determined evidence of Continental's conduct should be excluded, and that the jury should not consider Continental's conduct in its deliberations.

### *Effect on Damages*

■ Royal contends the trial court's evidentiary rulings with respect to Continental's conduct, and its instructions to the jury, effectively took away the jury's discretion to calculate damages. According to Royal, the effect of the court's actions was to force the jury to award Continental $900,000, the total amount paid out by Continental, if it found Royal had acted in bad faith.

■ Damages in an equitable subrogation action are measured by the difference between the amount the excess carrier would have contributed to the settlement unreasonably refused by the primary carrier, if any, and the amount ultimately paid by the excess carrier in satisfaction of the judgment or in settlement. (*Continental Cas. Co.* v. *United States Fid. & Guar. Co.,* *supra*, 516 F.Supp. at p. 391.)

■ Continental tried to prove Royal could have settled the case for $500,000, and thus Continental would not have had to pay any amount toward the Corderos' claim. Wilcoxen, the Corderos' attorney, testified he made a demand for $500,000 from Bidart. Louis A. DeMers, counsel for Petrolane, testified he sought a $500,000 contribution from Bidart toward a "total" settlement. In conflict with this testimony was the testimony of Stephen Clifford, the attorney retained by Royal for Bidart. He testified he never received a demand for $500,000, but he thought the Corderos might accept $1 million.

As Royal asserts, the jury could have found from this evidence that Continental was entitled to damages in an amount less the $900,000 (The final settlement of $1.4 million less Royal's policy limits of $500,000).

---

[3] Also consistent with the theory of equitable subrogation is *Kelley* v. *British Coml. Ins. Co.* (1963) 221 Cal.App.2d 554 [34 Cal.Rptr. 564], another case Royal relies on to no avail. This case merely stands for the proposition that excess carriers owe a duty of good faith and fair dealing to their insureds, and must exercise good faith when considering offers to settle falling within the limits of the excess policy.

The trial court instructed the jury that if Royal breached its duty of good faith and fair dealing, Continental was "entitled to recover that amount which will compensate [it] for all the injury, if any, caused by the defendant's failure to settle." The court explained that Continental had the burden of proving it suffered damages and "the amount of those damages . . . ." Finally, the court gave the following instruction: "Damages that plaintiff may recover if it meets its burden of proof include attorneys fees incurred by CNA [Continental] to defend Royal, the amount paid by CNA, or [sic] as a result of Royal's failure to settle within the policy limits. If you find plaintiff is entitled to damages the damages would include the $900,000 in excess liability which CNA had to pay on behalf of Bidart . . . ."

The last sentence does appear to create some ambiguity. However, as Continental argues, a note sent by the jury to the court during deliberations shows the jury believed it had the power to award any amount up to $900,000. The note states: "If we find in favor of the plaintiff are we responsible for determining the dollar amount of damages (other than attorney's fees) up to $900,000." Unfortunately, the record does not appear to include the court's response to the jury's question. In its brief, Royal states the court answered "yes" to the question.[4]

This court does not presume error. (*Walling* v. *Kimball* (1941) 17 Cal.2d 364, 373 [110 P.2d 58].) If the court did answer the jury's question with a "yes," then there was no error. Absent a showing of any other response, no error has been demonstrated. Neither the trial court's evidentiary rulings nor its instructions took away the jury's discretion to calculate damages.

### Duty to Defend

Royal asserts the trial court improperly submitted to the jury the issue of whether Royal breached its duty to defend Bidart. Royal also maintains the instructions given with respect to the duty to defend were misleading.

Royal cites the following series of instructions: "In this action plaintiff has the burden of establishing by a preponderance of the evidence that Royal breached its covenant of good faith and fair dealing, or engaged in

---

[4] At the time Royal prepared its brief, it believed the jury's note had been lost. Royal attempted to augment the record to include a declaration from its trial counsel, in which trial counsel stated her recollection of the content of the note. She thought the jurors had "inquired whether they must award the full $900,000 to CNA if they found Royal liable." If this were the question, the response of "yes" would take on a wholly different meaning. Counsel for Continental recovered a copy of the actual note. The note proved to have a significantly different meaning than that asserted by Royal.

unfair claims practices, and that Royal breached its duty to defend Bidart Brothers.

"In order to be awarded compensatory damages, plaintiff has the burden of establishing by a preponderance of the evidence that these damages were legally caused by Royal's breach of the covenant of good faith and fair dealing or unfair claims practices, or Royal's failure to defend Bidart Brothers.

"The primary insurer has the duty to defend its insured until such time as its policy limits are exhausted by reason of payment of settlement or judgment, and to do nothing that would injure the interest of the insured.

"Royal did not have the right to pay out the limits of its policy to plaintiffs or to request that CNA defend the action without the consent of its insured, Bidart Brothers.

"An insurer who wrongfully refuses to defend the case on behalf of an insured is liable for all damages legally caused by such refusal.

"If you find that defendant[ ] violated its duty to defend Bidart in the underlying action and also violated its duty of good faith and fair dealing, then plaintiff is entitled to recover that amount which will compensate him or her for all the injury, if any, caused by the defendant's failure to settle.

"Damages that plaintiff may recover if it meets its burden of proof include attorneys fees incurred by CNA to defend Royal, the amount paid by CNA, or as a result of Royal's failure to settle within the policy limits. If you find plaintiff is entitled to damages, the damages would include the $900,000 in excess liability which CNA had to pay on behalf of Bidart, attorneys fees incurred in defending the insured, an amount to be determined by the court."

At the beginning of trial, Continental moved to have the court determine, as a matter of law, whether Royal breached its duty to defend. After a rather lengthy discussion of the issue, during which all the parties and the court seemed to agree the matter was a question of law, the court decided to postpone its ruling on Royal's duty to defend until the close of the case. The court agreed with Continental that evidence of Royal's tender of the defense to Continental was relevant to show bad faith on the part of Royal.

Following the presentation of evidence, during discussion regarding the jury instructions, the court appeared to decide to allow the jury to determine whether Royal breached its duty to defend, and to reserve to itself

only the matter of the damages caused by any breach of the duty to defend (attorney's fees Continental incurred to defend Bidart).

Royal's argument on this issue is confusing, and contradictory. Royal argues the duty to defend issue presented a question of law, and that the parties had stipulated that it was a question for the court to decide. Yet Royal does not argue that the issue was determined incorrectly, i.e., that it did not breach its duty to defend. As discussed earlier, Royal did have an obligation to defend Bidart and the tender of the defense to Continental was improper. (*Signal Companies, Inc.* v. *Harbor Ins. Co., supra*, 27 Cal.3d at pp. 370-371; *Chubb/Pacific Indemnity Group* v. *Insurance Co. of North America, supra*, 188 Cal.App.3d at p. 698.) The fact that the court left this determination to the jury rather than itself, if error, was harmless. (See *California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 38 [221 Cal.Rptr. 171] [trial court improperly allowed jury to determine whether carrier breached duty to defend—harmless error].)[5] Further, Royal proceeds to argue that the trial court's instructions effectively directed a verdict on the duty to defend issue! Thus, Royal seems to be arguing the court did determine the duty to defend issue.

Another argument submitted by Royal has more merit, though there is no improvement in presentation. Royal contends the breach of the duty to defend was a separate issue from the breach of the covenant of good faith and fair dealing, and that the jury instructions failed to make this distinction. Royal insists that any breach of its duty to defend could not have caused any of Continental's damages beyond the attorney's fees and costs incurred to defend Bidart. According to Royal, the tender of the defense to Continental occurred long after Petrolane settled, and after any chance for Bidart to settle with the Corderos for the primary policy limits had passed.

Royal concedes that in a case where an insurer denies coverage, refuses to defend, and declines to pay a settlement demand, the refusal to defend may be considered as evidence of bad faith. (See *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 660-661 [328 P.2d 198, 68 A.L.R.2d 883].) Royal takes the position that the converse is not true—evidence of a failure to defend occurring after the insurer declines to pay a settlement demand is not relevant.

Royal has not found a case on point, but it does cite *Nies* v. *National Auto. & Casualty Ins. Co.* (1988) 199 Cal.App.3d 1192 [245 Cal.Rptr. 518]. In *Nies*, the insurer paid the insured's claim after some delay and after the insured filed a bad faith action. The Court of Appeal held that the insurer's

---

[5] But see footnote 6, *post.*

responsive pleadings in the bad faith action were irrelevant to prove the insurer acted in bad faith. (*Id.* at p. 1200.) The insured's theory of recovery was that the insurer breached its duties by failing to investigate promptly and to research the law controlling the insured's claim; i.e., that the insurer had acted in bad faith prior to the payment of the insured's claim. The *Nies* court found the responsive pleadings, which disputed coverage and prayed for the return of the sums paid to the insured, were not relevant on matters occurring before the insurer paid the insured, and that no evidence was presented that the insured suffered damages as a result of the insurer's "purportedly bad faith litigation tactics." (*Ibid.*) The *Nies* court concluded the insurer "had an absolute right to defend against plaintiff's claim." (*Id.* at p. 1201.) To permit an expert to testify that the pursuit of that right was evidence of bad faith would "seriously and wrongfully impair defendants' right to have their day in court." (*Ibid.*)

Royal believes the facts of this case are analogous to *Nies*—that the breach of the duty to defend was not relevant to the alleged breach of the covenant of good faith and fair dealing, occurring as a result of Royal's rejection of the Corderos' settlement offer.

As Continental argues, *Nies* involved important public policy considerations not present here: Specifically, an insurer's right to defend itself against a bad faith action. Continental cites *Davy* v. *Public National Ins. Co.* (1960) 181 Cal.App.2d 387, 401 [5 Cal.Rptr. 488], for the proposition that acts occurring after an insurer's unreasonable rejection of a settlement offer are relevant evidence on the question of whether the insurer acted in bad faith. In *Davy*, the appellate court summarized the evidence demonstrating that an insurer breached its obligation to act in good faith toward its insured. In addition to the insurer's refusal to pay a reasonable settlement offer, the court noted the insurer's subsequent cancellation of the insured's policy, as further basis to conclude the insurer did not act in good faith. (*Ibid.*)

The trial court appears to have properly concluded that Royal's breach of its duty to defend was relevant on two issues. One, as a wholly separate breach of a duty to its insured, which entitled Continental to recover, at minimum, the costs and attorney's fees it incurred to defend Bidart. (*California Shoppers, Inc.* v. *Royal Globe Ins. Co., supra,* 175 Cal.App.3d at pp. 38-39.)[6] ██ Two, as further evidence that Royal did

---

[6]A refusal to defend may simply be a breach of the insurance contract, or it may be tortious, resulting in a breach of the covenant of good faith and fair dealing. (See *California Shoppers, Inc.* v. *Royal Globe Ins. Co., supra,* 175 Cal.App.3d at pp. 15, 50; *Tibbs* v. *Great American Ins. Co.* (9th Cir. 1985) 755 F.2d 1370, 1375.) Punitive damages may be recovered for a tortious breach of the duty to defend. (*Tibbs, supra,* at p. 1375.) In the present case,

not act in good faith toward its insured. (*Davy* v. *Public National Ins. Co., supra,* 181 Cal.App.2d at p. 401.) The jury instructions and special verdict interrogatories appear to have adequately set out these issues for the jury.

Royal has not shown any error requiring reversal.

### Insurance Code Section 790.03 Cause of Action

◼ Royal contends the trial court erred when it failed to grant Royal's motion for nonsuit with respect to Continental's first cause of action for violation of statutory duties (Ins. Code, § 790.03, subd. (h)).[7] Royal suggests the Supreme Court's decision in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] raises serious doubts as to whether the trial court correctly denied the motion.

*Moradi-Shalal* ruled that, insofar as third party claimants are concerned, Insurance Code section 790.03, subdivision (h), does not create a private cause of action against an insurer. (*Id.* at p. 304, overruling *Royal Globe Ins.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329].) Two Court of Appeal panels from different districts have concluded *Moradi-Shalal* implicitly abolished all private causes of action, including first party claims by the insured against his or her insurer. (*Zephyr Park* v. *Superior Court* (1989) 213 Cal.App.3d 833, 837-838 [262 Cal.Rptr. 106]; *Industrial Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1093, 1097 [257 Cal.Rptr. 655].) The instant case, in which Continental seeks to enforce the rights of the insured, is a first party action.

◼ The holding in *Moradi-Shalal,* however, applies prospectively—it does not apply to those cases seeking relief under Insurance Code section 790.03 filed before the Supreme Court's decision became final. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d at p. 305.) The Court of Appeal panel in *Zephyr Park* concluded the preclusion of the use of section 790.03 as to first party claims also applied prospectively, from the date the decision in *Moradi-Shalal* became final. (*Zephyr Park* v. *Superior Court, supra,* 213 Cal.App.3d at p. 840.)[8]

---

Continental sought only to recover its $900,000 plus interest, costs and attorneys fees incurred in defending Bidart, and attorney's fees for this action. A determination that a breach of the duty to defend was tortious would appear to present a question for a fact finder.

[7] Insurance Code section 790.03 defines "unfair methods of competition and unfair and deceptive acts or practices in the business of insurance." Among the prohibited acts is "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." (Subd. (h)(5).)

[8] The court in *Industrial Indemnity Co.* v. *Superior Court, supra,* 209 Cal.App.3d 1093, did not discuss the prospective or retrospective application of its decision.

Thus, the Supreme Court's ruling in *Moradi-Shalal* (and the Court of Appeal rulings in *Zephyr Park* and *Industrial Indemnity Co.*), which bars private causes of action under Insurance Code section 790.03, do not apply in this case as this action was filed long before the decision in *Moradi-Shalal* became final.

■ This discussion does not end here, however. A second aspect of *Moradi-Shalal* requires examination. With regard to the pending "*Royal Globe* actions," the Supreme Court held "there must be a conclusive judicial determination of the insured's liability before *the third party* can succeed in an action against the insurer under section 790.03." (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra*, 46 Cal.3d at pp. 305-306, italics added.) In third party actions, the prerequisite of a conclusive judicial determination is not met by settlement of the claim against the insured. (*Id.* at p. 311.)

Unlike third party actions, a conclusive judicial determination is not a prerequisite in first party actions. (*Zephyr Park* v. *Superior Court, supra*, 213 Cal.App.3d at p. 840; *Carter* v. *Superior Court* (1987) 194 Cal.App.3d 424, 427-428 [239 Cal.Rptr. 723]; *Bodenhamer* v. *Superior Court* (1987) 192 Cal.App.3d 1472, 1480 [238 Cal.Rptr. 177].) "The duty of an insurer to its insured is more extensive than is its duty to a third party claimant." (*Bodenhamer* at p. 1480.) The duty owed by an insurer to its insured, to comply with the statutory requirements of Insurance Code section 790.03, can arise prior to and independently of a final determination of the insured's liability. (*Ibid.*)

The fact the Corderos settled their claim against Bidart did not preclude Continental's first cause of action. A conclusive judicial determination of the Corderos' suit against Bidart was not a prerequisite.

The trial court correctly denied Royal's motion for nonsuit.

The judgment is affirmed.

Racanelli, P. J., and Stein, J., concurred.