573 So.2d 343 (1990)
HOME INSURANCE COMPANY, Appellant,
v.
Albert OWENS and Nationwide Mutual Insurance Company, Appellees.
Nos. 88-1990, 88-3344 and 89-0291.
District Court of Appeal of Florida, Fourth District.
November 14, 1990.
Rehearing and Certification Denied February 19, 1991.
*344 John Beranek of Aurell, Radey, Hinkle & Thomas, Tallahassee, and Solomon, Murphy & Cote, P.A., Fort Lauderdale, for appellant.
Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, and Roland Gomez of the Law Office of Roland Gomez, Miami Lakes, for appellee-Albert Owens.
LETTS, Judge.
This appeal involves a first party claim by an insured against his insurer for bad faith refusal to settle. Among other issues raised by the insurer, unsuccessful at the trial level, is that evidence relevant to the insurer's pleadings denying coverage should have been inadmissible and that the jury verdict for punitive damages was in error. We affirm.
This matter had as its genesis an automobile accident in which the insured was horribly injured, but blameless. The insurer's answer to the original complaint, which sought med-pay, personal injury protection benefits and uninsured motorist coverage, asserted numerous reasons why there was no coverage, including expiration of the policy, laches, waiver and estoppel, exclusions, and lack of consideration for issuance of the coverage. The complaint was then amended to include a bad faith action which the insurer again denied "under any theory of law." The insurer also initially responded to a request for admissions, again denying coverage. Ultimately, coverage was admitted.
The initial point which we address concerns cross examination of the insurer's claims manager on the question of bad faith refusal to provide coverage. During that examination the insured sought to have the insurer's pleadings, outlined in the preceding paragraph, admitted into evidence. The insurer cites Winn Dixie Stores, Inc. v. Gerringer, 563 So.2d 814 (Fla. 3d DCA 1990), for the proposition that "Rule 1.370 itself establishes the exclusive means for testing the sufficiency of answers or objections to requests for admissions and that denials cannot be used for impeachment purposes."[1] We note, first of all, that the insurer's pleadings in the case sub judice were, in the end, denied admittance and second, that Gerringer was not a bad faith case. In pursuing a bad faith claim, it appears to us that evidence of the kind here objected to is relevant because it has "a logical tendency to prove or disprove a fact which is of consequence to the outcome of the action." Ehrhardt, Florida Evidence § 401.1 (2d Ed. 1984). It is true that the trial court in this case allowed the questioning for "impeachment purposes" which label may or may not have been proper. Nonetheless, at a minimum, we conclude that the trial judge was right for the wrong reason. Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979). In accord with our conclusion, we concur with the Eleventh Circuit Court of Appeals. In T.D.S. Inc. v. Shelby Mutual Insurance Co., 760 F.2d 1520 (11th Cir.1985), rehearing denied, 769 F.2d 1485 (11th Cir.1985), a bad faith case, the court held that the insurance company's litigation conduct was admissible, relevant evidence. See also Norman v. American National Fire Insurance Co., 198 Ill. App.3d 269, 144 Ill.Dec. 568, 555 N.E.2d 1087 (1990). Finally, there was an abundance of other evidence as to the conduct of the insurer in the case now before us. We find no reversible error.
Turning to the question of the punitive damages award, the insurer argues that its conduct "never rose to the level of a bad *345 faith action" under section 624.155, Florida Statutes (1985) and that "at most this [conduct] was merely an explained delay in payment by a carrier acting in good faith." From this the insurer concludes that, as a matter of law, its conduct "did not come close to meeting the statutory requirements of section 624.155 for punitive damages." We do not agree with that conclusion. There is evidence-a-plenty of bad faith in the record, certainly sufficient to go to the jury under the requirements of the statute.
Prior to the 1982 passage of section 624.155, Florida Statutes, Florida law did not recognize a first party suit for bad faith refusal to pay a claim unless a separate tort was involved, such as fraud or intentional infliction of emotional distress. Industrial Fire and Casualty Insurance Co. v. Romer, 432 So.2d 66, 67 (Fla. 4th DCA 1983). Section 624.155, Florida Statutes (1985) provides:
(1) Any person may bring a civil action against an insurer when such person is damaged:
(a) By a violation of any of the following provisions by the insurer:
1. Section 626.9541(1)(i), (o), or (x);
2. Section 626.9551;
3. Section 626.9705;
4. Section 626.9706; or
5. Section 626.9707; or
(b) By the commission of any of the following acts by the insurer:
1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests;
2. Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made; or
3. Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage. Notwithstanding the provisions of the above to the contrary, a person pursuing a remedy under this section need not prove that such act was committed or performed with such frequency as to indicate a general business practice.
(2) As a condition precedent to bringing an action under this section, the department and the insurer must be given written notice of the violation. The notice shall state with specificity the facts which allegedly constitute the violation and the law which the plaintiff is relying upon and shall state that such notice is given in order to perfect the right to pursue the civil remedy authorized by this section. No action shall lie if, within 60 days thereafter, the damages are paid or the circumstances giving rise to the violation are corrected.
(3) Upon adverse adjudication at trial or upon appeal, the insurer shall be liable for damages, together with court costs and reasonable attorney's fees incurred by the plaintiff.
(4) No punitive damages shall be awarded under this section unless the acts giving rise to the violation occur with such frequency as to indicate a general business practice and these acts are:
(a) Willful, wanton, and malicious;
(b) In reckless disregard for the rights of any insured; or
(c) In reckless disregard for the rights of a beneficiary under a life insurance contract.
Any person who pursues a claim under this subsection shall post in advance the costs of discovery. Such costs shall be awarded to the insurer if no punitive damages are awarded to the plaintiff.
(5) This section shall not be construed to authorize a class action suit against an insurer or a civil action against the department, its employees, or the Insurance Commissioner, or create a cause of action when a health insurer refuses to pay a claim for reimbursement on the ground that the charge for a service was unreasonably high or that the service provided was not medically necessary.
*346 Initially addressing subsection (2) above, we agree with the insured that any defect in the notice given was waived and cannot be considered on appeal. As to subsection (4), we also believe that the record supports a finding that the violations indicated a general business practice.
As to subsection (4)(a), we conclude that this is tantamount to a repetition of the pre-statute essentials to support an award of punitive damages. Subsection (4)(b) appears to countenance a punitive damages award for conduct which is merely in "reckless disregard for the rights of any insured." It may well be that the legislature intended sub-paragraph (b) to set up a less stringent requirement than the "willful and wanton misconduct equivalent to criminal manslaughter" set forth in Como Oil Co. v. O'Loughlin, 466 So.2d 1061, 1062 (Fla. 1985). However, reference to the statutory definition of criminal manslaughter, section 782.07, Florida Statutes (1989) reflects that such a crime involves "culpable negligence." In turn, culpable negligence has been defined as "reckless indifference to the rights of others." Jackson v. State, 100 So.2d 839 (Fla. 1st DCA 1958). Genesis Publications, Inc. v. Goss, 437 So.2d 169 (Fla. 3d DCA 1983); Hospital Corp. of Lake Worth v. Romaguera, 511 So.2d 559 (Fla. 4th DCA 1986); Hartford Accident & Indemnity Co. v. Mathis, 511 So.2d 601 (Fla. 4th DCA 1987). As a consequence, any supposed variation between sub-paragraphs (a) and (b) becomes somewhat amorphous and perhaps even circular. Whatever, this record supports a finding that the insurer acted in reckless disregard for the rights of the insured, and the jury so found pursuant to a jury instruction submitted by the insurer.
In the remaining smorgasbord of points on appeal, we find no reversible error.
AFFIRMED.
GLICKSTEIN, J., concurs.
GARRETT, J., dissents with opinion.
GARRETT, Judge, dissenting.
I would find reversible error as to one of the "smorgasbord" points on appeal.
In rebuttal, appellee called Irvin Minney, an administrator for the State of Florida, Department of Insurance (Department). The day before, at Minney's request, the Department faxed him a copy of a one-page record. Over defense objection, he testified from the record which indicated that during a one year period sixteen notices had been filed against appellant. Minney said he did not know the nature of the notices, the types of coverage they involved or the offices they were lodged against. Under section 624.155(1)(a) and (b), Florida Statutes (1987), the notices were for insurance code violations or improper claims practices.
In support of its motion for a new trial, appellant discovered from material furnished by the Department that during the year in question only four such notices had been filed. But a deposition taken of a Department spokesperson revealed that the remaining fourteen notices were either in field offices or had been destroyed. The trial judge denied the new trial on the ground that the rebuttal evidence impeached Michael Richard's testimony that there had been no claims of a similar nature for the four years he had been appellant's claims manager.
I would reverse and remand for a new trial. Minney's testimony about the record should have been excluded. Much confusion still remains as to the number of notices against appellant and which of the notices relate to the facts of this appeal. The circumstances of the public record source showed a lack of trustworthiness. § 90.803(8), Fla. Stat. (1987). At trial, the record could not be deciphered as to which of the sixteen notices were relevant to the case. Since only relevant evidence is admissible, it was error to admit evidence of an unrelated notice. § 90.402, Fla. Stat. (1987). The admission of up to three times as many unrelated notices as related notices aggravated the error. The cumulative effect of the unrelated notices unfairly prejudiced appellant in the eyes of the jury.
NOTES
[1] There were actually three versions of this case out of the Third District. The two earlier are at 14 F.L.W. 1048 and 14 F.L.W. 1645. The above cite is to the final version.