STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Plaintiff–Counter–Defendant–Appellant

v.

PROGRESSIVE MUTUAL INSURANCE COMPANY, an Ohio corporation, Defendant

Vicki L. Lee, Defendant–Counter–Claimant–Appellee.

No. 05SA369.

Supreme Court of Colorado, En Banc.

Sept. 11, 2006.

Patterson, Nuss & Seymour, P.C., Franklin D. Patterson, Gregg E. Kay, Englewood, Colorado, Attorneys for State Farm Mutual Automobile Insurance Company, an Illinois corporation.

William L. Keating, Alan C. Shafner, Denver, Colorado, Attorneys for Vicki L. Lee.

No appearance by or on behalf of Progressive Mutual Insurance Company, an Ohio corporation.

Justice COATS delivered the Opinion of the Court.

I.

Pursuant to 10th Cir. R. 27.1, The United States Court of Appeals for the Tenth Circuit certified to this court the following questions:

Which statute, Colo. R. Stat. § 10–4–609(2) or § 10–4–609(4)(a), should be used in the first instance to determine whether a tortfeasor's motor vehicle coverage is underinsured?

If Colo. R. Stat. § 10–4–609(4)(a) is used in the first instance to determine whether a tortfeasor's vehicle is underinsured does the language stating that the limits of the tortfeasor's insurance shall be compared to the limits of the "the insured's policy" mean that no other policy can be stacked with the insured's policy to determine whether the tortfeasor's vehicle is underinsured?

If Colo. R. Stat. § 10–4–609(4)(a) is used in the first instance to determine whether a tortfeasor's motor vehicle is underinsured does the statute require that all applicable motor vehicle policies, including the insured's policy, be stacked together and compared with the tortfeasor's liability limits to determine whether the tortfeasor's vehicle is underinsured?

We agreed to answer the questions, as authorized by C.A.R. 21.1, in the context provided.

We conclude that by specifying the amount of underinsured motorist coverage an insurer must offer the named insured, as well as the conditions under which the insurer may restrict its liability for injuries caused by underinsured motorists to the limits of a single policy covering the insured, subsection (2) of the statute is integral to the meaning of the phrase, "limits for uninsured motorist coverage under the insured's policy," in subsection (4), and therefore to the determination whether a motor vehicle is in fact underinsured. Considered as a whole, the provisions of section 10–4–609, C.R.S. (2005), indicate that a tortfeasor's motor vehicle is underinsured whenever the limits of liability against which its use is insured are less than the sum of the underinsured motorist coverage declared in the injured party's policy and the underinsured motorist coverage declared in all other applicable policies.

## II.

The certifying court provided the following statement of factual and procedural circumstances, giving context to the questions.

Vickie Lee (the insured) was a passenger on Jerry Maggard's motorcycle when it was struck by a motor vehicle driven by Sonja Madson in July 2002 in Loveland, Colorado.

At the time of the accident, Ms. Madson (the tortfeasor) was insured by Progressive Mutual Insurance Company (Progressive) under a motor vehicle policy that provided $100,000 in liability coverage per person. Ms. Lee was insured under a motor vehicle policy from State Farm Mutual Automobile Insurance Company (State Farm), which had a $100,000 uninsured/underinsured motorist limit. And Mr. Maggard, who is not related to Ms. Lee, was insured under a separate motor vehicle policy from State Farm, with the same $100,000 uninsured/underinsured motorist limit contained in Ms. Lee's policy.

With State Farm's permission, Ms. Lee settled her claim against Ms. Madson for the Progressive policy limits. Thereafter, Ms. Lee asserted that the Progressive payment did not fully compensate her for her injuries, and she made a claim to State Farm for uninsured/underinsured benefits under her own and Mr. Maggard's motor vehicle policies.

State Farm denied the claim and filed a declaratory judgment action in the U.S. District Court for the District of Colorado in which it sought a declaration that Ms. Madson's motor vehicle was not underinsured. The parties filed cross motions for summary judgment. After briefing and oral argument, the district court denied State Farm's motion for summary judgment and granted Ms. Lee's cross motion. The court held that Ms. Lee's and Mr. Maggard's policies should be stacked to determine whether the tortfeasor's vehicle was underinsured. This appeal [to the Tenth Circuit] followed.

## III.

■ Liability policies delivered or issued for delivery in this state with respect to motor vehicles licensed for highway use in the state are obliged to offer coverage for the protection of persons insured under them who would be legally entitled to recover damages from owners or operators of uninsured motor vehicles. § 10–4–609(1), C.R.S. (2005). Such "uninsured motorist coverage" also includes coverage for bodily injury or death for which the insured is entitled to collect damages from the owner or driver of an "underinsured motor vehicle." See § 10–4–609(2) and (4). As applicable to the scenario presented by the certification, an underinsured motor vehicle is a motor vehicle the use of which, although insured, has liability coverage that is less than the limits for uninsured motorist coverage under the injured person's policy. § 10–4–609(4)(a).

Subsection (2) of the statute permits policies, under limited circumstances, to prohibit "aggregating, combining, multiplying, or pyramiding limits of separate policies providing uninsured and underinsured motorist coverage as provided in section 10–4–609," which is statutorily designated "stacking." *See* §§ 10–4–402(3.5) and 601(14). The same subsection, however, expressly bars insurers from disallowing the stacking "of the uninsured or underinsured portions of a policy issued to an insured and a separate policy covering the insured which was not issued to the insured or a resident relative." [1] Although nothing in the definition of stacking itself limits the purposes for which policy limits may be aggregated or combined, and although the provisions of subsection (2), specifying the conditions under which stacking must be permitted, similarly contain no such restriction, the certification raises a question whether the definition of "underinsured motor vehicle" in subsection (4) [2] necessarily implies that stacking is protected by subsection (2) *only* for the purpose of calculating the extent of under-coverage, once a motor vehicle is classified as "underinsured," and not for the purpose of determining whether a tortfeasor's vehicle is "underinsured" in the first place.

Ultimately the answer to this question turns on the meaning of the phrase "limits for uninsured motorist coverage under the insured's policy," in subsection (4)'s definition of "underinsured motor vehicle," and, more particularly, whether the word "limits" in this phrase refers *only* to the limits of under-insured motorist coverage, per person and per accident, specified in the declarations of the injured party's policy. If so, the class of motor vehicles considered to be underinsured would be restricted to those vehicles with less liability coverage than the underinsured motorist coverage provided by any single policy of the injured party, standing alone, whether or not other policies also purport to cover the injured party. While this understanding of the words used in subsection (4)(a) may be reasonable, on their face, it is not the only reasonable meaning they can have. It is equally reasonable to understand this language as a reference to the total amount of uninsured or underinsured motorist coverage permitted by the terms and conditions of the injured party's policy, as a whole. By statute, the policy may not prohibit aggregating, combining, multiplying, or pyramiding the limits of separate policies providing uninsured or underinsured motorist coverage that were issued to anyone other than the insured or her resident relatives. § 10–4–609(2).

■ Where particular statutory language lends itself to more than one reasonable understanding, various accepted aids to construction may help resolve the ambiguity. *Frank M. Hall & Company, Inc. v. Newsom,* 125 P.3d 444, 448 (Colo.2005). We have often noted, for example, that a provision existing as part of a comprehensive statutory scheme should be interpreted, whenever possible, to harmonize the whole. *Id.* Understanding the word "limits" in subsection (4)(a) to intend

---

1. The full text of subsection (2) states:

   Prior to the time the policy is issued or renewed, the insurer shall offer the named insured the right to obtain higher limits of uninsured motorist coverage in accordance with its rating plan and rules, but in no event shall the insurer be required to provide limits higher than the insured's bodily injury liability limits or one hundred thousand dollars per person and three hundred thousand dollars per accident, whichever is less. A policy may contain provisions which prohibit stacking the limits of more than one uninsured motorist coverage policy as provided in this section, if such provisions are included in a single policy covering multiple vehicles or in multiple policies issued by one insurer or an affiliated insurer, under common ownership or management, to an insured or to a resident relative of such insured.

   Such provisions shall not prohibit stacking of the uninsured or underinsured portions of a policy issued to an insured and a separate policy covering the insured which was not issued to the insured or a resident relative. For purposes of this subsection (2), underinsured motorist coverage is included in the term "uninsured motorist coverage" pursuant to subsection (4) of this section.

2. Subsection (4), in relevant part, states:

   An underinsured motor vehicle is a land motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident, but the limits of liability for bodily injury or death under such insurance or bonds are:
   (a) Less than the limits for uninsured motorist coverage under the insured's policy....

the full amount of uninsured motorist coverage allowed by the injured party's entire policy, including those terms and conditions permitting (as required by statute) the aggregation of limits from certain other policies, serves to avoid conflict between subsections (2) and (4). By contrast, treating the word "limits" as a reference to nothing more than the coverage limits appearing in the declarations of the injured party's policy would result in an open conflict with the stacking protections of subsection (2), or at best, impose a limitation on either subsection (2) or the definition of stacking itself, not found in the language of either provision.

Moreover, to use one amount or figure for purposes of determining whether a motor vehicle is underinsured, and an entirely different figure for purposes of calculating the extent of its undercoverage, would not only be counterintuitive but would have anomalous effects in application. To permit the aggregation of applicable policy limits only when the amount of underinsured motorist coverage declared in an injured party's policy exceeds the tortfeasor's liability coverage would have the effect of rewarding the injured party beyond the amount by which the tortfeasor's vehicle is actually underinsured, on the one hand, or, on the other, depriving the injured party of coverage guaranteed by other insurers, as required by statute for the express purpose of protecting against inadequately insured tortfeasors. Such a cramped construction would also permit a party injured by a completely uninsured motorist access to the aggregate of uninsured or underinsured motorist coverage from all applicable policies, while a party injured by a motorist with liability coverage equal to the uninsured or underinsured motorist coverage declared in her own policy, no matter how much less than the aggregate of applicable

uninsured motorist coverage that might be, could recover no more than the amount of the tortfeasor's liability coverage.[3] Such disparate treatment of parties injured by completely uninsured motorists and those injured by motorists who are merely inadequately insured would clearly run contrary to the intent of the general assembly. *See Shelter Mut. Ins. Co. v. Thompson*, 852 P.2d 459, 463 (Colo.1993); *Kral v. Am. Hardware Mut. Ins. Co.*, 784 P.2d 759, 764 (Colo.1989) ("Subsection (4) permits an injured insured to recover for loss caused by an underinsured motorist to the same extent the insured would recover if the underinsured motorist had no insurance.").

Finally, the history of section 609 supports the broader interpretation of the word "limits" in subsection (4)(a). In *Thompson v. Shelter Mut. Ins. Co.*, 835 P.2d 518 (Colo. App.1991), the court of appeals declared provisions prohibiting the stacking of underinsured motorist coverage (including even those encompassing policies issued by the same insurer to the same insured) a violation of public policy. Although this court ultimately reversed, the general assembly had already responded by enacting SB 92217. *See* ch. 212, sec. 1, § 10–4–402(3.5), 1992 Colo. Sess. Laws 1758, 1758. Among other things, the legislature made "stacking" a statutory term of art; expressly made its definition of stacking applicable to underinsured motorist coverage, *see* ch. 212, sec. 3, § 10–4–601, 1992 Colo. Sess. Laws 1758, 1759; and specified the conditions under which insurance policies could, and could not, prohibit stacking, *see* ch. 212, secs. 2, 4, § 10–4–418(2)(c) and 609(2), 1992 Colo. Sess. Laws 1758, 1758–59.[4]

It is clear, both from the action actually taken by the legislature and the committee

---

3. For example, under the circumstances of this case, if Madson's vehicle was "uninsured" at the time of the accident, Lee would be permitted to recover up to the total of $200,000 in UM/UIM coverage limits of her policy ($100,000) stacked with Maggard's policy ($100,000). However, under the circumstances here, where Madson's $100,000 in liability coverage is equal to Lee's UM/UIM coverage, yet less than the aggregate coverage provided by both Lee and Maggard's policies combined, Lee would be entitled to recover only $100,000.

4. Following the general assembly's enactment of SB 92217 in 1992, this court reviewed the court of appeals' decision in *Thompson*, holding that the underlying legislative policy of underinsured motorist coverage does not differ from that of uninsured motorist coverage, and consequently that antistacking provisions pertaining to underinsured motorist coverage do not violate public policy. *Thompson*, 852 P.2d at 467.

discussions, that the objective of the bill was neither to allow nor to prohibit stacking in all cases. Rather it was to articulate the extent to which so-called antistacking provisions would be considered consistent with the public policy of this state. By permitting insurers to prohibit stacking with regard to multiple policies issued to the same insured, the legislature, in effect, merely permitted insurers to limit their own exposure for injuries caused by uninsured or underinsured motorists to the amount of coverage they were required to offer in a single policy, whether or not that policy insured more than one vehicle.

Nothing in the history of the 1992 amendments, however, suggested an intent to permit individual insurers to limit their exposure below the statutory requirement or to limit an insured party's total recovery. The insurers' proposed construction of subsection (4)(a), by restricting the class of motorists considered underinsured to those with less liability coverage than the underinsured motorist coverage declared in a single policy of the injured party, would in many cases severely restrict recovery and permit various, unrelated insurers to share in providing the amount of coverage statutorily required per policy. This outcome would obviously run counter to the legislative design to insure against injuries caused by underinsured motorists.

Were the existing provision and the newer amendments irreconcilable, the newer amendments would clearly control. *See* § 2–4–206. Similarly, where a construction of the existing provision that is consistent with and furthers the clear intent of the amendments is available, that construction must be adopted.

## IV.

Although subsection (4)'s definition of uninsured motor vehicles may be susceptible of more than one reasonable interpretation, when construed in light of the related provisions of section 10–4–609, the history of the section's amendments, and the policy considerations supporting them, it must be con-

strued to intend that the initial determination whether a tortfeasor's vehicle is underinsured be made by comparing the liability limits of the tortfeasor's vehicle with the sum of the uninsured or underinsured portions of the injured party's policy and the uninsured or underinsured portions of any other applicable policies.

Justice EID does not participate.