Jessica PARSONS, By and Through her parent and next friend Elissa PARSONS, and Elissa Parsons, individually, Plaintiffs–Appellants and Cross–Appellees,

v.

ALLSTATE INSURANCE COMPANY, Defendant–Appellee and Cross–Appellant.

No. 03CA2051.

Colorado Court of Appeals, Div. I.

Nov. 30, 2006.

Certiorari Denied June 27, 2007.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2006.

Lloyd C. Kordick & Associates, Lloyd C. Kordick, Colorado Springs, Colorado, for Plaintiffs–Appellants and Cross–Appellees.

Walberg, Dagner & Tucker, P.C., Wendelyn K. Walberg, Lynaia M. South, Englewood, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge BERNARD.

In this insurance bad faith action, plaintiffs, Elissa Parsons (mother) and Jessica Parsons (daughter), appeal the judgment in favor of defendant, Allstate Insurance Company. We affirm in part, reverse in part, and remand.

The following facts are undisputed. This case arises from an automobile accident in which the at-fault party was uninsured (the uninsured driver). The uninsured driver was intoxicated at the time and later pled guilty to an alcohol-related driving offense. The Parsons sued both the uninsured driver and Allstate, their own insurer. The Parsons asserted claims of negligence against the uninsured driver and bad faith breach of an insurance contract, outrageous conduct, and violation of the Colorado Consumer Protection Act against Allstate. They also sought uninsured motorist benefits from Allstate.

Following a trial, the jury found in favor of the Parsons on their negligence and uninsured motorist claims. The jury awarded damages of $19,500 to mother and $10,000 to daughter, plus interest. The jury found in favor of Allstate on the bad faith, outrageous conduct, and Consumer Protection Act claims. The trial court, finding each party prevailed on some issues, ordered each party to pay partial costs.

## I. Uninsured Driver as Separate Defendant

Raising a series of arguments, the Parsons contend the trial court should have treated the uninsured driver as a separate defendant from Allstate. We disagree.

The Parsons' original complaint contained tort and contract claims, alleging the uninsured driver was careless, negligent, and reckless and requesting recovery from Allstate under the terms of the uninsured motorist insurance policy. Allstate's answer raised defenses, including some based in contract, and requested a jury trial.

The uninsured driver was served with process and did not file an answer, and a clerk's default was entered pursuant to C.R.C.P. 55(a). The Parsons requested the trial court to enter a default judgment against the uninsured driver. Allstate objected, claiming it might be bound by a default judgment and arguing the hearing was set too quickly for it to conduct discovery to defend its interests. Allstate requested the default hearing against the uninsured driver take place when trial was set.

A hearing on damages was then held, which concluded with the trial court's taking the matter under advisement. The trial court subsequently issued a written order deferring any decision on damages until the trial. The Parsons withdrew their request for a default judgment hearing and requested damages be determined by a jury instead of the trial court.

### A. Trial on the Issue of Damages

■ The Parsons contend the trial court erred in refusing to enter a default judgment against the uninsured driver and requiring them to go to trial on the issue of damages. Thus, the Parsons argue the trial court erred by deferring the issue of damages to a trial in which Allstate was allowed to participate. We do not agree.

The Parsons rely on *Brekke v. State Farm Mutual Automobile Insurance Co.,* 81 P.3d 1101 (Colo.App.2003) (*Brekke I*), a decision of a division of this court in effect at the time of the trial in this case, which was affirmed in part and reversed in part by the supreme court in *State Farm Mutual Automobile Insurance Co. v. Brekke,* 105 P.3d 177 (Colo. 2004) (*Brekke II*). The issue in *Brekke II* was whether, and to what extent, an insurance company providing uninsured motorist coverage could participate in a lawsuit filed by its insured against both the insurance company and an uninsured motorist.

The supreme court held insurance companies do not have a right to a jury trial on tort claims, but may, upon a sufficient showing their interests will not be adequately protected if they are not allowed to participate in the proceedings, be permitted to participate

fully in the damages portion of default judgment hearings. This authorization applies when an uninsured motorist does not enter an appearance, the motorist's liability is established by default, and the insured's damages are resolved in a default judgment hearing. The supreme court discussed the trial court's role, stating: "[T]he decision on the proper role for the insurance provider in the litigation falls within the sound discretion of the district court.... [A]n abuse of discretion here occurs where the court's failure to properly order the proceedings virtually assures prejudice to a party." *Brekke II, supra,* 105 P.3d at 193 (citations omitted).

Here, the trial court entered a default against the uninsured driver, but ruled Allstate would be allowed to participate in a hearing to be held at the time of trial in which the only issue was damages. This course was authorized by the supreme court's decision in *Brekke II* and did not prejudice the Parsons. Thus, we do not perceive the trial court abused its discretion in permitting Allstate to participate in the damages portion of the proceedings.

Further, when the Parsons withdrew their request for a damages hearing and asked that the issue be resolved by a jury, they waived any objection to Allstate's participation in the damages portion of the trial. *Cf.* 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1914 (2d ed.1977) (existing party that does not object to intervention may waive right to object to intervenor's participation).

We conclude there was no error in the trial court's deferring the entry of a default judgment until the time of trial and allowing Allstate to participate in the trial on the issue of damages.

### B. Objection to Discovery

The Parsons contend the trial court treated Allstate as if it had stepped into the uninsured driver's shoes. As grounds for this contention, the Parsons refer to the trial court's ruling on an objection to the discovery of the uninsured driver's alcohol records. We disagree.

In an effort to obtain information about the uninsured driver's level of intoxication at the time of the accident, the Parsons served a subpoena on the probation department, requesting records pertaining to the uninsured driver's alcohol evaluation. The probation department refused to provide these records, citing statutory and privacy concerns. The Parsons filed a motion to compel discovery. Allstate responded that the trial court should deny the Parsons' motion because the Parsons had not complied with rules governing service of subpoenas. The response also stated that, because Allstate had been sued, Allstate had "stepped into the shoes of the tortfeasor."

Contrary to this assertion, Allstate did not assume the uninsured driver's position in this case. While Allstate was entitled to intervene in the action and even align itself with the uninsured driver on certain issues, it was not entitled to undertake the uninsured driver's defense. *See Brekke II, supra; Briggs v. Am. Family Mut. Ins. Co.,* 833 P.2d 859 (Colo.App.1992); *State Comp. Ins. Fund v. Gulf Ins. Co.,* 628 P.2d 182, 183 (Colo.App. 1981) (insurance company does not step into "the shoes of the tortfeasor").

The trial court's order denying the Parsons' discovery motion referred to the privacy considerations raised by the probation department. The trial court then found the motion was moot because the uninsured driver's alcohol content on the date of the accident, which the trial court included in the order, was contained in a police affidavit available in the criminal case file. The order did not treat Allstate as having assumed the uninsured driver's defense or as standing in her "shoes."

Thus, the record does not support the Parsons' contention and instead supports the trial court's determination the issue was moot. *Cf. Osborn v. Harrison Sch. Dist. No. 2,* 844 P.2d 1283 (Colo.App.1992) (discovery request moot because results had no effect on summary judgment).

### C. Limitation of Recovery

■ The Parsons submit the trial court erred in refusing to enter judgment for the full amount of the jury verdict. The court's

ruling was based on Allstate's argument that recovery was limited by mother's uninsured motorist policy. We agree with the Parsons' position.

The purpose of uninsured motorist coverage is to compensate insureds for loss caused by negligent and financially irresponsible motorists. *Kral v. Am. Hardware Mut. Ins. Co.*, 784 P.2d 759 (Colo.1989). The insurer must pay the insured, up to the limits of the policy, whatever losses the insured proves the insured is legally entitled to recover from the uninsured motorist. *Briggs v. Am. Family Mut. Ins. Co., supra.*

Uninsured motorist coverage is not triggered unless an insured is legally entitled to recover damages from the operator of an uninsured automobile. Section 10–4–609(1)(a), C.R.S.2006. A tort claim against an uninsured motorist is distinct from a contract claim against an insurer. While an insurer's obligation to an insured in these circumstances is prescribed by the policy limits, the insured is also entitled to recover from the uninsured motorist or other insurance sources whatever additional damages may have been found to exist. As the supreme court observed in *Brekke II, supra,* 105 P.3d at 187: "Once judgment was entered against [the uninsured motorists] Brekke ... had the right to execute judgment and collect damages from these two defendants." *See also State Farm Mut. Auto. Ins. Co. v. Progressive Mut. Ins. Co.,* 148 P.3d 117, 2006 WL 2589162 (Colo. No. 05SA369, Sept. 11, 2006)(stacking of insurance coverage); *Farmers Ins. Exch. v. Walther,* 902 P.2d 930 (Colo.App.1995)(insurer entitled to offset amount of recovery from tortfeasor).

Here, the jury awarded $19,500 in damages to mother, and with interest, the award came to $26,649.67. However, the uninsured motorist coverage in mother's insurance policy was capped at $25,000. The trial court initially entered judgment for $26,649.67, but later amended the judgment because the award exceeded mother's uninsured motorist coverage.

While Allstate is not obligated to pay more than the policy limits for uninsured motorist coverage, *see Peterman v. State Farm Mut.* *Auto. Ins. Co.,* 961 P.2d 487 (Colo.1998), the Parsons are entitled to "execute judgment and collect damages from" the uninsured driver. *Brekke II, supra,* 105 P.3d at 187. Accordingly, the trial court must enter judgment in the full amount of the award.

## II. Attorney's Litigation Conduct as Evidence of Insurance Bad Faith

The Parsons contend the trial court erred in ruling that evidence of the conduct of an insurer's attorney during litigation is not admissible to show an insurer acted in bad faith. They argue the court erred in entering judgment on the pleadings in favor of the insurer and in dismissing their bad faith claim arising from the conduct of Allstate's attorney. We disagree.

### A. Judgment on the Pleadings

In considering a motion for judgment on the pleadings, a court must construe the allegations of the pleadings strictly against the movant, must consider the allegations of the opposing party's pleadings as true, and should not grant the motion unless the pleadings themselves show that the matter can be determined on the pleadings. *Humphrey v. O'Connor,* 940 P.2d 1015 (Colo.App.1996).

This standard is consistent with that employed in resolving a motion to dismiss for failure to state a claim, *see Espinoza v. O'Dell,* 633 P.2d 455 (Colo.1981), and our review of a trial court's determination of such a motion is de novo. *Abts v. Bd. of Educ.,* 622 P.2d 518 (Colo.1980).

Judgments on the pleadings, therefore, are viewed with disfavor and will be affirmed only if it appears beyond doubt that the party can prove no set of facts in support of the claim which would entitle the party to relief. The allegations of the complaint must be viewed in the light most favorable to the nonmoving party. *Dunlap v. Colo. Springs Cablevision, Inc.,* 829 P.2d 1286 (Colo.1992).

### B. Bad Faith Breach of Insurance Contract Claims

For an insured to prevail on a bad faith breach of contract claim against an

insurer, the insured must establish the insurer acted unreasonably and with knowledge or reckless disregard of its unreasonableness. *Dale v. Guar. Nat'l Ins. Co.,* 948 P.2d 545 (Colo.1997). The determination of whether an insurer has breached its duties to an insured in bad faith is one of reasonableness under the circumstances. *Surdyka v. DeWitt,* 784 P.2d 819 (Colo.App.1989). In other words, the question is whether a reasonable insurer under the circumstances would have denied or delayed payment of the claim. *Pham v. State Farm Mut. Auto. Ins. Co.,* 70 P.3d 567 (Colo.App.2003).

■■■■■ An insurer has a legal obligation to deal with an insured fairly and in good faith. *Farmers Group, Inc. v. Trimble,* 691 P.2d 1138 (Colo.1984). "[T]he duty of good faith derives from the relationship of an insured claimant to the provider of benefits. This relationship, arising from the underlying insurance or compensation obligation ... permeates all of the dealings between the parties." *Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1268 (Colo.1985). The duty of good faith continues as long as the insurer-insured relationship exists. *Bucholtz v. Safeco Ins. Co.,* 773 P.2d 590 (Colo.App.1988). Thus, the tort of bad faith breach of an insurance contract encompasses "all of the dealings between the parties, including conduct occurring after the arbitration procedure." *Dale v. Guar. Nat'l Ins. Co., supra,* 948 P.2d at 552.

### C. Attorney's Litigation Conduct

The Parsons argue the trial court erroneously relied on an out-of-state case, *Timberlake Construction Co. v. U.S. Fidelity & Guaranty Co.,* 71 F.3d 335 (10th Cir.1995), in granting Allstate partial judgment on the pleadings and in dismissing the Parsons' bad faith claim with respect to Allstate's attorney's conduct after commencement of litigation. We are not persuaded.

### 1. Criteria from Other Jurisdictions

Some courts have allowed the introduction of certain kinds of litigation conduct, such as settlement offers, *White v. W. Title Ins. Co.,* 40 Cal.3d 870, 221 Cal.Rptr. 509, 710 P.2d 309 (1985); answers to a complaint and responses to requests for admissions, *Home Ins. Co. v. Owens,* 573 So.2d 343 (Fla.Dist.Ct. App.1990); refusal to investigate an accident when crucial information was brought to an insurer's attention, *Gooch v. State Farm Mut. Auto. Ins. Co.,* 712 N.E.2d 38 (Ind.Ct. App.1999); pursuing a frivolous appeal, *Federated Mut. Ins. Co. v. Anderson,* 297 Mont. 33, 991 P.2d 915 (1999); and encouraging or condoning wrongful litigation conduct, *Barefield v. DPIC Cos.,* 215 W.Va. 544, 600 S.E.2d 256 (2004).

The rationale for permitting the introduction of such evidence has been to discourage insurers from inducing the early filing of lawsuits and delaying serious investigation and negotiation, *White v. W. Title Ins. Co., supra;* showing an insurer's bad faith was a continuing course of conduct and proving malice, *Federated Mut. Ins. Co. v. Anderson, supra;* and showing the reasonableness of an insurer's evaluation and denial of an underlying claim, *Knotts v. Zurich Ins. Co.,* 197 S.W.3d 512, 523 (Ky.2006).

Other courts have rejected such evidence. For example, the *Timberlake* court determined a letter from the insurer's attorney to the insurer's adjuster, a counterclaim the insurer filed against the insured, and a motion to join another corporation as a necessary party should not have been admitted.

Similar analysis has been employed to deny the introduction of evidence of unsuccessful settlement negotiations, *Sw. Nurseries, LLC v. Florists Mut. Ins., Inc.,* 266 F.Supp.2d 1253 (D.Colo.2003); defensive pleadings and litigation tactics in the absence of a "smoking gun," *Graham v. Gallant Ins. Group,* 60 F.Supp.2d 632, 635 (W.D.Ky.1999); general litigation conduct, as opposed to the insurer's settlement behavior during litigation, *Knotts v. Zurich Ins. Co., supra;* obtaining witness statements, taking depositions, preparing for trial, and conducting trial, *Palmer v. Farmers Ins. Exch.,* 261 Mont. 91, 861 P.2d 895 (1993); filing motions to dismiss, objecting to discovery, not taking depositions at suggested times, making mistakes in scheduling meetings, and rejecting a request for mediation, *Sims v. Travelers Ins. Co.,* 2000 OK CIV APP 145, 16 P.3d 468

(2000); and issuing interrogatories and taking depositions, *O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 1999 PA Super 161, 734 A.2d 901 (1999).

The *Timberlake* court, construing Oklahoma law, stated that, while evidence of litigation conduct "may, in some rare instances, be admissible on the issue of bad faith, such evidence will generally be inadmissible, as it lacks probative value and carries a high risk of prejudice." *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co., supra*, 71 F.3d at 341. *Timberlake* indicated allowing evidence of litigation conduct occurring after suit has been filed would undermine an insurer's right to contest questionable claims and to defend itself against such claims.

The Kentucky Supreme Court noted when addressing this issue:

> Allowing evidence of litigation strategies and tactics would expose the insurer's entire defense in a coverage action to scrutiny by the jury, unless the insurer won the underlying suit. The jury then, with the assistance of hindsight, and without the assistance of insight into litigation techniques, could "second guess the defendant's rationales for taking a particular course."

*Knotts v. Zurich Ins. Co., supra*, 197 S.W.3d at 520–521 (quoting *White v. W. Title Ins. Co., supra*, 221 Cal.Rptr. at 524, 710 P.2d at 324 (Lucas, J., concurring and dissenting)).

### 2. Colorado Case Law

In *Southerland v. Argonaut Insurance Co.*, 794 P.2d 1102 (Colo.App.1990), a complaint was filed alleging the insurer had breached its duty of good faith in handling the workers' compensation claim. Thereafter, the insurer made late payments of workers' compensation benefits and refused to cooperate with an employee's rehabilitation efforts. A division of this court described these acts as "merely a continuation of the same difficulties that preceded the filing of the complaint and . . . relevant as evidence of [the insurer's] habitual pattern in dealing with plaintiff," and determined this evidence was admissible as proof of the insurer's bad faith. *Southerland v. Argonaut Ins. Co., supra*, 794 P.2d at 1106.

*Dale v. Guaranty National Insurance Co., supra*, involved an insurer that delayed payment after arbitration, resulting in lack of treatment and worsening of the insured's medical condition. Citing *Southerland*, the supreme court observed that evidence of a consistent pattern of delaying payments was relevant in proving an insurer's bad faith. The supreme court's observed that the legislature had declared certain enumerated unfair claim settlement practices by insurers to be unreasonable under § 10–3–1104(1)(h), C.R.S.2006.

In *Tait v. Hartford Underwriters Insurance Co.*, 49 P.3d 337 (Colo.App.2001), a division of this court, referring to § 13–21–102(3), C.R.S.2006, affirmed an increased award of exemplary damages in a bad faith breach of insurance contract action based on the insurer's improper litigation tactics. The insurer's conduct in that case involved complaints about an expedited trial date, discovery violations that required hearings to insure compliance, and delegating to counsel its continuing obligations to the insured. The division viewed this conduct as the kind of willful and wanton conduct the insurer knew or should have known would have aggravated the plaintiff's damages.

*Tait* focused on the nature of the decisionmaker allowed to consider evidence of litigation conduct. The division allowed evidence of litigation conduct to be introduced when considered by a court, rather than a jury, in the context of an exemplary damages award and when there are "extraordinary facts" justifying a court's consideration of such evidence.

Citing *Tait*, the supreme court in *Coors v. Security Life of Denver Insurance Co.*, 112 P.3d 59, 67 (Colo.2005), determined a trial court's increase in punitive damages under § 13–21–102(3) was justified, because a trial court "may increase an award based on behavior during the pendency of the case." The supreme court noted the trial court found the insurer "obscured and misrepresented who its decision makers were and failed to meet its most basic discovery and disclosure obligations even after being compelled to produce information." *Coors v. Sec.*

*Life of Denver Ins. Co., supra,* 112 P.3d at 67. The supreme court did not discuss *Tait's* rationale.

### 3. Policy Considerations

■ A bad faith insurance claim in Colorado "is the affirmative act of the insurer in unreasonably refusing to pay a claim and failing to act in good faith . . . that forms the basis for liability in tort." *Farmers Group, Inc. v. Trimble, supra,* 691 P.2d at 1142. Because the focus of the claim is on the decision to refuse to make or to delay making payments owed under an insurance policy, *Goodson v. Am. Standard Ins. Co.,* 89 P.3d 409 (Colo.2004), the relevance of litigation conduct by an attorney after the refusal or delay has occurred may be limited. *See Timberlake Constr. Co. v. U.S. Fid. & Guar. Co., supra.*

■ As indicated in *Dale v. Guaranty National Insurance Co., supra,* the issue of whether an insurer has acted reasonably is an objective one, based upon evidence of industry standards. *Goodson v. Am. Standard Ins. Co., supra.* The unfair practices listed in § 10–3–1104(1)(h) do not establish a standard of care actionable in tort, but they may be used as evidence of industry standards. *Am. Family Mut. Ins. Co. v. Allen,* 102 P.3d 333 (Colo.2004). Several of those practices could implicate conduct occurring after litigation has begun, such as not attempting in good faith to effectuate a prompt, fair, and equitable settlement once liability has become reasonably clear, § 10–3–1104(1)(h)(VI), C.R.S.2006; attempting to settle a claim for less than a reasonable amount based upon the insurance application, § 10–3–1104(1)(h) (VIII), C.R.S.2006; or raising certain defenses or offsets in third-party claims, § 10–3–1104(1)(h)(XV), C.R.S. 2006. While these statutory factors might form the basis for the admission of some kinds of evidence of an insurer's post-filing settlement conduct, they do not address others, such as many acts attorneys take in the course of litigation.

Permitting evidence of attorney behavior to form the basis for a bad faith claim against an insurer could create potential conflicts with the attorney's litigation privilege, which bars defamation actions based on statements made about the subject matter of proposed or pending litigation. *See Club Valencia Homeowners Ass'n v. Valencia Assocs.,* 712 P.2d 1024 (Colo.App.1985). This privilege "also bars other non-defamation claims that stem from the same conduct." *Buckhannon v. U.S. W. Commc'ns, Inc.,* 928 P.2d 1331, 1335 (Colo.App.1996). "The purpose of this privilege . . . is to afford litigants the utmost freedom of access to the courts to preserve and defend their rights and to protect attorneys during the course of their representation of their clients." *Club Valencia Homeowners Ass'n v. Valencia Assocs., supra,* 712 P.2d at 1027.

Allowing evidence of attorney litigation conduct as proof of bad faith as a general rule could result in ethical dilemmas for attorneys representing insurance companies. Arguably, they would be forced to withdraw from representing their clients if they were likely to become necessary witnesses. Colo. RPC 3.7. Using attorney litigation conduct as a basis for proving an insurer's bad faith also could involve attempts to obtain or introduce information protected by the attorney-client and work-product privileges. Section 13–90–107(1)(b), C.R.S.2006; Colo. RPC 1.6; *Munoz v. State Farm Mut. Auto. Ins. Co.,* 968 P.2d 126 (Colo.App.1998) (distinguishing application of work-product doctrine between lawyer acting as legal counselor and lawyer acting as investigator); *see Sims v. Travelers Ins. Co., supra* (contents of insurer's claim file was protected by attorney-client privilege in bad faith litigation conduct case).

There are means to regulate the conduct of attorneys during litigation besides introducing it as the basis of a bad faith claim. For example, the Rules of Civil Procedure govern the behavior of attorneys in litigation and provide an enforcement mechanism when their behavior strays beyond established boundaries. *E.g.,* C.R.C.P. 11(a) (attorney's signature provides good faith certification pleadings are grounded in fact and law and arguments are not designed to harass, delay, or increase cost of litigation); C.R.C.P. 26 (duty of disclosure); C.R.C.P. 37 (sanctions for failure to make disclosures or cooperate in discovery). Attorney conduct violating the

Rules of Professional Conduct can result in professional discipline. C.R.C.P. 251.5. An attorney's actions obstructing justice or disobeying court orders can be punished as contempt. C.R.C.P. 107.

### 4. The Appropriate Test

The Parsons argue the combination of *Dale v. Guaranty National Insurance Co.*, supra; *Southerland v. Argonaut Insurance Co.*, supra; and *Tait v. Hartford Underwriters Insurance Co.*, supra, required the trial court to allow the jury to consider evidence at trial of Allstate's attorney's litigation conduct on the issue of whether Allstate acted in bad faith. Under the circumstances presented here, analyzed pursuant to the test described below, we disagree.

Neither *Dale* nor *Southerland* involved attorney litigation conduct. *Tait*, in which the division referred to "extraordinary facts," allowed a judge to consider evidence of litigation tactics and strategy for the purposes of increasing exemplary damages. Thus, the issue of whether attorney litigation conduct should be allowed to be introduced before a jury as evidence of bad faith has not been resolved in Colorado.

*Tait* recognized the risks of introducing proof of attorney litigation conduct before a jury: creating evidentiary problems and deterring an insurer's attorney from effective, zealous advocacy. Combining the Colorado policy considerations discussed above with the reservations expressed in cases like *Timberlake*, we conclude there are substantial concerns about the relevancy, probative value, and prejudicial impact of evidence of attorney litigation conduct when presented as evidence of a bad faith claim. Thus, we conclude such evidence may be admissible in some circumstances. However, we determine the appropriate test to be used for evaluating whether evidence of attorney litigation conduct is admissible as part of a bad faith claim must recognize the importance of those concerns.

■ One such formulation, which we endorse here for purposes of evaluating whether attorney litigation conduct is admissible as part of a bad faith claim, is found in an article by Randy Papetti, *The Insurer's Duty of Good Faith in the Context of Litigation*, 60 Geo. Wash. L.Rev.1931, 1976 (Aug.1992). As suggested in this law review article, evidence of an attorney's post-filing litigation conduct may be admitted if the risks of unfair prejudice, confusion of the issues, or misleading the jury, and considerations of undue delay, waste of time, or the presentation of unnecessary cumulative evidence are substantially outweighed by the probative value of the evidence.

This test is consistent with other evidentiary rules that prohibit or restrict the admissibility of potentially relevant evidence in order to promote important policy considerations. *E.g.*, § 16–10–301, C.R.S.2006 (limitations on the introduction of evidence of similar transactions in sexual assault cases); CRE 404 (limitations on character evidence and on evidence of other crimes, wrongs, or acts); CRE 407 (evidence of subsequent remedial measures); CRE 408 (evidence of compromise and offers to compromise); CRE 409 (evidence of paying or offering to pay medical expenses); CRE 410 (offers to plead guilty or no contest and withdrawn guilty pleas); CRE 411 (evidence of liability insurance); *see also Masters v. People*, 58 P.3d 979 (Colo.2002)(procedures to be followed when determining whether to admit evidence pursuant to CRE 404(b)).

### 5. Application of the Appropriate Test to This Case

The Parsons' bad faith claim concerning attorney litigation conduct alleged Allstate's counsel filed an answer denying all responsibility and consisting of groundless denials and defenses; refused to allow discovery to proceed until a case management order was entered; declined to sign a case management order; asked the court to vacate the default judgment hearing; would not make himself available for this hearing; forced an unnecessary jury trial to be held; and refused to be deposed. Much of this conduct appeared to be designed to procure Allstate's participation in the damages portion of the case against the uninsured driver.

The nature of these allegations illustrates the problem with allowing attorney litigation

conduct to be admitted as evidence of an insurer's bad faith. For example, insurers would be deterred from conducting a vigorous defense if their pleadings could be used as evidence of pre-existing bad faith. *See Nies v. Nat'l Auto. & Cas. Ins. Co.*, 199 Cal.App.3d 1192, 245 Cal.Rptr. 518 (1988).

As indicated above, in *Brekke II*, the supreme court held an insurer should be allowed to participate in the damages portion of an uninsured motorist case in order "to present legitimate defenses that the uninsured motorist fails to raise." *Brekke II, supra*, 105 P.3d at 190. Thus, an attorney's actions designed to achieve that result would not be evidence of bad faith because an insurer is entitled to protect its interests in circumstances like those arising in this case. If an insurer can protect itself, an attorney representing the insurer must be expected to engage in competent and ethical litigation conduct to achieve that end.

There are legitimate reasons, aside from bad faith, why an attorney would refuse to be deposed. These include a desire to protect attorney-client confidences or a reasonably held position that depositions of opposing counsel are rarely, if ever, appropriate. *Compare Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir.1986) (depositions of attorneys should be limited to situations in which there are no other means to obtain the information, and the information is relevant, not privileged, and crucial to prepare), *with Hunt Int'l Res. Corp. v. Binstein*, 98 F.R.D. 689 (N.D.Ill.1983) (attorney can be deposed and may claim privilege on a question-by-question basis).

The attorney's alleged conduct in this case is similar to the conduct found to be inadmissible in cases like *Graham v. Gallant Insurance Group, supra; Palmer v. Farmers Insurance Exchange, supra; Sims v. Travelers Insurance Co., supra;* and *O'Donnell ex rel. Mitro v. Allstate Insurance Co., supra.* Therefore, we conclude the attorney's conduct in this case did not amount to the "extraordinary facts," *Tait v. Hartford Underwriters Ins. Co., supra*, found only in "rare instances," *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co., supra*, that would justify allowing a jury to consider an attor-

ney's litigation conduct as part of a bad faith claim.

Under the test enunciated above, there was evidence to support a conclusion that the probative value of the attorney's conduct in this case was slight. Based upon the principles we have discussed, the dangers of unfair prejudice, misleading the jury, and confusing the issues were significant. Thus, we conclude the trial court did not err in denying the Parsons' request to introduce evidence of the conduct of the insurer's attorney and in dismissing their bad faith claim with respect to such conduct.

### III. Recusal of Trial Judge

The Parsons also contend the trial judge should have recused to avoid the appearance of impropriety. We disagree.

The question of whether a judge should be disqualified in a civil action is within the discretion of the trial court, whose decision will not be overturned on appeal absent an abuse of discretion. *Zoline v. Telluride Lodge Ass'n*, 732 P.2d 635 (Colo. 1987).

A judge must be disqualified if interested or prejudiced in an action. C.R.C.P. 97; *see* C.J.C. 3(C). Even if a trial judge is confident he or she is impartial, the judge's duty is to "eliminate every semblance of reasonable doubt or suspicion that a trial by a fair and impartial tribunal may be denied." *Johnson v. Dist. Court*, 674 P.2d 952, 956 (Colo.1984).

When presented with a motion for disqualification, the judge must accept as true the facts stated in the motion and accompanying affidavits, and determine only their legal sufficiency. *Prefer v. PharmNetRx, LLC*, 18 P.3d 844 (Colo.App.2000). To be legally sufficient, the motion and affidavits must state facts from which it may reasonably be inferred that the judge has a bias or prejudice that will prevent the judge from dealing fairly with the moving party. *Steiger v. Burroughs*, 878 P.2d 131 (Colo. App.1994). Mere opinions or conclusions that the judge is biased are insufficient.

*Moody v. Corsentino,* 843 P.2d 1355 (Colo. 1993).

A ruling by a judge on a legal issue does not require disqualification absent facts in the motion or affidavits from which it may reasonably be inferred the judge is biased or prejudiced or has a bent of mind. *Goebel v. Benton,* 830 P.2d 995 (Colo.1992); *Prefer v. PharmNetRx, LLC, supra* (rejecting movant's allegations of bias and prejudice based entirely on court's legal rulings).

Here, in essence, the Parsons argue the trial judge should have been disqualified because the court issued rulings unfavorable to them in the default judgment proceeding and on their bad faith claim. The Parsons fail to present any facts from which it might reasonably be inferred the judge was biased or prejudiced against them, and they present only speculation and conjecture about the judge's intent when making her rulings. Hence, the trial court properly denied their motion to recuse.

### IV. Costs to Prevailing Party

The Parsons contend the trial court erred in denying their motion for payment of some of their costs and ordering them to pay some of Allstate's costs. We conclude further proceedings are required.

An appellate court will not overturn an award of costs on appeal absent an abuse of discretion. *Fort Morgan Reservoir & Irrigation Co. v. Groundwater Appropriators of S. Platte River Basin, Inc.,* 85 P.3d 536 (Colo.2004).

C.R.C.P. 54(d) provides that costs shall be allowed as of course to the prevailing party. *See* § 13–16–108, C.R.S. 2006. To prevail for purposes of C.R.C.P. 54(d), the party must prevail on a significant issue in the litigation and achieve some of the benefits sought therein. *Remote Switch Sys., Inc. v. Delangis,* 126 P.3d 269 (Colo. App.2005). The number of claims upon which a party prevails and the amount awarded for such claims are not determinative of who is the prevailing party for purposes of awarding costs. *Grynberg v. Agri Tech, Inc.,* 985 P.2d 59 (Colo.App.1999), *aff'd,* 10 P.3d 1267 (Colo.2000).

Where each of the parties can arguably be viewed as having prevailed in part, an award of costs is committed to the sole discretion of the trial court. *Mackall v. Jalisco Int'l, Inc.,* 28 P.3d 975 (Colo.App. 2001). In determining an award of costs, the court is to evaluate the relative strengths and weaknesses of each party's claims, the significance of each party's successes in the context of the overall litigation, and the time devoted to each claim. *Archer v. Farmer Bros. Co.,* 90 P.3d 228 (Colo.2004).

At trial, the Parsons prevailed on the negligence and uninsured motorist claims, and Allstate prevailed on the bad faith, outrageous conduct, and Consumer Protection Act claims. It does not appear from the record the trial court conducted an analysis under *Archer v. Farmer Bros. Co., supra.* Hence, we remand to the trial court to reconsider the parties' motions for costs under the proper standard.

In light of the foregoing, it is unnecessary to address the other issues raised by the parties, as those issues would arise only should a retrial have been granted.

The judgment is reversed to the extent it denies judgment against the uninsured driver and to the extent it awards costs. The judgment is affirmed in all other respects. The case is remanded to the trial court for further proceedings on the entry of judgment against the uninsured driver and the parties' awards of costs.

Judge MÁRQUEZ and Judge NEY * concur.